ACCEPTED
12-15-00081-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
8/3/2015 3:19:09 PM
CATHY LUSK
CLERK

IN THE COURT OF APPEALS
FOR THE
TWELFTH SUPREME JUDICIAL DISTRICT
AT TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
8/3/2015 3:19:09 PM
CATHY S. LUSK
Clerk

| | | |
|---|---|---|
| JOSHUA PAUL CALHOUN | § | |
| Appellant | § | |
| | § | |
| VS. | § | NO. 12-15-00081-CR |
| | § | |
| THE STATE OF TEXAS | § | |
| Appellee | § | |

_____

APPELLANT'S BRIEF ON THE MERITS
_____


On Appeal from the 173rd Judicial District Court
of Henderson County, Texas
The Honorable Dan Moore, Presiding

Trial Court Cause No. A-21,464

LESLIE POYNTER DIXON
Attorney at Law
State Bar No. 08327050
P.O. Box 636
Edgewood, Texas 75117
Telephone:  (903) 896-7649
Facsimile:  (903) 896-7686
Email: Leslie@LesliePDixon.LegalOffice.pro
ATTORNEY FOR APPELLANT

ORAL ARGUMENT
REQUESTED

1

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:

Joshua Paul Calhoun
TDCJ # 01985495
Goodman Unit
349 Private Road 8430
Jasper, Texas 75951

TRIAL COURT JUDGE:

The Hon. Dan Moore
173rd Judicial District Court
Henderson County, Texas
100 E. Tyler, Suite 207
Athens, Texas 75751
(903) 675-6107

ATTORNEYS FOR THE STATE:
(at Trial)

Nancy Margaret McKinney-Rumar
Assistant District Attorney
109 W. Corsicana, #103
Athens, Texas 74751
(903) 675-6100

Justin R. Weiner
Assistant District Attorney
109 W. Corsicana, #103
Athens, Texas 74751
(903) 675-6100

ATTORNEY FOR APPELLANT:
(at Trial Guilt-Innocence Phase)

Joshua Paul Calhoun,  *Pro Se*
TDCJ # 01985495
Goodman Unit
349 Private Road 8430
Jasper, Texas 75951

(at Trial Punishment Phase)

Samuel M. Smith
Attorney at Law
219 N. Palestine Street
Athens, TX 75751
(903) 675-8005
Stand-by Counsel

ATTORNEY FOR THE STATE:
(on Appeal)

Nancy Margaret McKinney-Rumar
Assistant District Attorney
109 W. Corsicana, #103
Athens, Texas 74751
(903) 675-6100

ATTORNEY FOR APPELLANT:
(on Appeal)

Leslie Poynter Dixon
Attorney at Law
P.O. Box 636
Edgewood, Texas 75117
(903) 896-7649

## TABLE OF CONTENTS

Identity Of Parties And Counsel ..............................................................................2

Table Of Contents.................................................................................................4

Index Of Authorities.............................................................................................7

Statement Of The Case..........................................................................................11

Issues Presented....................................................................................................12

Issue Number One

The Judgment of conviction for the felony offense of evading with a vehicle is incorrect, because the jury convicted Appellant of the misdemeanor offense of evading.  (CR 85; 8 RR 65)............................................................12

Issue Number Two

The sentence of 15 years in prison is outside the range of punishment, because Appellant was convicted of a misdemeanor offense with a maximum punishment of one year in jail (CR 123)......................................12

Issue Number Three

If this Court finds that Appellant was, in fact, convicted of the felony evading arrest with a vehicle, the sentence is void because it is outside the range of punishment, because the State failed to prove the enhancement paragraph alleged in the indictment beyond a reasonable doubt.  (10 RR 11-100)...............................................................................................12

Issue Number Four

The state failed to prove the extraneous offense of theft of an airplane offered at punishment beyond a reasonable doubt.  (10 RR 11-19)..............13

Issue Number Five

The state failed to prove the extraneous offense of theft of a diesel tanker truck offered at punishment beyond a reasonable doubt. (10 RR 34-71).................................................................................................13

Issue Number Six

The state failed to prove the extraneous offense of Cause No. 12,689 offered at punishment beyond a reasonable doubt. (10 RR 89-09)..........................13

Issue Number Seven

The state failed to prove the extraneous offense of Cause No. A,21,075 offered at punishment beyond a reasonable doubt. (10 RR 89-90)..............13

Issue Number Eight

The state failed to prove the extraneous offense of Cause U.S. District Court No. 09-CR-011590001 offered at punishment beyond a reasonable doubt. (10 RR 89-90)......................................................................................13

Issue Number Nine

The evidence was insufficient to support a jury verdict of guilty to Evading Arrest With A Vehicle. (7 RR 20-61)............................................................13

Issue Number Ten

The trial court erred by submitting the *Geesa* definition of "reasonable doubt" to the jury. (CR 85; 8 RR 65)............................................................13

Issue Number Eleven

The trial court erred in denying appellant's motion for mistrial without conducting a hearing on whether jurors saw appellant being transported in a patrol unit during trial. (8 RR 7-10)............................................................13

5

Statement of Facts............................................................................14

Summary of the Argument................................................................20

Argument and Authorities................................................................23

    Issue Number One.....................................................................23

    Issue Number Two.....................................................................23

    Issue Number Three...................................................................28

    Issue Number Four.....................................................................28

    Issue Number Five.....................................................................28

    Issue Number Six.......................................................................28

    Issue Number Seven...................................................................28

    Issue Number Eight....................................................................28

    Issue Number Nine.....................................................................43

    Issue Number Ten......................................................................54

    Issue Number Eleven.................................................................60

Prayer.............................................................................................62

Statement Regarding Oral Argument................................................63

Certificate of Service......................................................................64

Certificate of Word Count...............................................................64

# INDEX OF AUTHORITIES

## CASES

*Adkins v. State,* 418 S.W.3d 856 (Tex.App.-Houston [14th Dist.] 2013).................57

*Almanza v. State.* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g) .............. 56

*Bluitt v. State*, 70 S.W.3d 901, 905-06 (Tex.App.--Fort Worth, 2002, no pet).......56

*Bradley v. State*, 560 S.W.2d 650 (Tex. Crim. App. 1978)....................................26

*Calton v. State*, 176 S.W.3d 231 (Tex. Crim. App. 2005)......................................25

*Camacho v. State,* 13-10-00369-CR (Tex.App.-Corpus Christi 2011)
  (not   designated for publication)....................................................................52

*Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.-Houston [14th Dist.]
  1993)...............................................................................................................53

*Delgado v. State*, 235 S.W.3d 244, 249  (Tex.Crim.App. 2007)............................27

*Dennis v. State,*  178 S.W.3d 172 (Tex.App.-Houston [1st Dist.] 2005)................34

*Escort v. State*, 621 S.W.2d 608 (Tex. Crim. App. 1981).......................................26

*Ex Parte Rich,* 194 S.W.3d 508 (Tex.Crim.App. 2006)..........................................33

*Ex Parte Wilson,* 306 S.W.3d 259 (Tex.Crim.App. 2009) (op. on reh'g)...............27

*Flowers v. State*, 200 S.W.3d  919 (Tex.Crim.App. 2007)................................33,31

*Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991) ............... 17,22,23,54-58,60

*Hall v. State*, 225 S.W.3d 524 (Tex.Crim.App. 2007)............................................26

*Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007) ................................ 52

*Jackson v. Virginia, ,* 443 U.S. at 318, 99 S.Ct. 2781 (1979)................................43

*Kelly v. State,* 841 S.W.2d 917 (Tex.App. - Corpus Christi 1992)....................60,62

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)........................................25

*Matthews v. State,* 02-14-00428-CR (Tex.App. - Fort Worth 2015) .................... 57

*Paulson v. State,* 28 S.W.3d 570 (Tex.Crim.App. 2000). ...........................55,57,58

*Plata v. State*, 926 S.W.2d 300 (Tex. Crim. App. 1996)....................................22,28

*Reed v. State,* 500 S.W.2d 497 (Tex.Crim.App.1973)...........................................29

*Reyes v. State,* 938 S.W.2d 718 (Tex.Crim.App. 1996)........................................ 55

*Schroeder v. State*, Nos. 13-13-00379-CR, 13-13-00380-CR (Tex.App.-Corpus Christi 2015) (not designated for publication)...............................................32

*Skinner v. State*, 956 S.W.3d 532 (Tex.Crim.App. 1997)......................................27

*Smith v. State*, 227 SW.3d 753, 763 (Tex.Crim.App. 2007).................................34

*Sweed v. State,* 351 S.W.3d 63 (Tex.Crim.App. - 2011).......................................27

*Vosberg v. State,* 80 S.W.3d 320 (Tex.App.-Fort Worth 2002)........................56,57

*Wise v. State*, 394 S.W.3d 594, 598, 600 (Tex.App.-Dallas 2012)....................30,43

*Wood v. State,* 453 S.W.3d 488 (Tex.App.-San Antonio 2014*)*...........................32

*Woods v. State*, 152 S.W.3d 105 (Tex.Crim.App. 2004 *en banc*)..........................58

*Zuniga v. State,* No. 01-09-00715-CR (Tex.App.-Houston [1st Dist. 2011) (not designated for publication)..........................................................52,53

8

CONSTITUTIONS

*U.S. Const.* amend. XIV..................................................................................62

*Tex. Const.* art. I sec. 10..............................................................................62

STATUES AND RULES

*Tex. R. App. P.* 33.1(a)..................................................................................56

*Tex. R. Evid.* 902.........................................................................................38

*Tex. Code Crim. Proc.* art. 36.01.................................................................29

*Tex. Code Crim. Proc.* art. 36.14 ...............................................................27

*Tex. Code Crim. Proc.* art. 37.07...............................................................29,38

*Tex. Code Crim. Proc.* art. 37.07(a)(1)........................................................33

*Tex. Code Crim. Proc.* art. 37.07(3((d)........................................................34

*Tex. Code Crim. Proc.* art. 37.09(1)............................................................26

*Tex. Penal Code* sec. 2.01..........................................................................36,53

*Tex. Penal Code* sec. 38.04.........................................................................25,43

*Tex. Penal Code* sec. 38.04(b)(2)(A) .........................................................25

9

IN THE COURT OF APPEALS
FOR THE
TWELFTH SUPREME JUDICIAL DISTRICT
AT TYLER, TEXAS


JOSHUA PAUL CALHOUN          §
    Appellant          §
              §
VS.          §          NO. 12-15-00081-CR
              §
THE STATE OF TEXAS          §
    Appellee          §

_____

APPELLANT'S BRIEF ON THE MERITS
_____


TO THE HONORABLE COURT OF APPEALS:

    Comes now Appellant, JOSHUA PAUL CALHOUN, by and through his

attorney, Leslie Poynter Dixon, and respectfully submits his brief on the merits

urging this Court to: (a) reverse Appellant's conviction and render an acquittal; or,

in the alternative (b) remand the case to the Trial court for a new trial on

punishment; or, in the alternative (c) reverse Appellant's conviction and remand

the case to the trial court for a new trial; or, in the alternative (d) reform the

Judgment to reflect a conviction for the misdemeanor offense of Evading Arrest

and remand to the trial court for a new trial on punishment and remand to the trial court for a new trial on punishment.

STATEMENT OF THE CASE

Appellant was indicted on August 7, 2014 for the offense of Evading Arrest With A Vehicle, a Third Degree Felony (2-10 years in prison), alleged to have occurred on June 18, 2014.  The Indictment contained one enhancement paragraph for a prior felony theft conviction in Cause No. A-10,030 on March 17, 2004 out of Henderson County, Texas which enhanced the punishment to a Second Degree Felony (2-20 years in prison). (CR 1)   In the enhancement cause, the State produced an Order Revoking Community Supervision and Imposition of Sentence. (12 RR 89-90)  The Indictment did not include a deadly weapon paragraph, but the State filed a notice seeking an affirmative finding on the morning of trial.  (CR 53) On the same date, the Court granted Appellant's motion to represent himself during the guilt phase of the trial and appointed standby counsel.  The Court appointed standby counsel to represent Appellant at the punishment phase of  the trial.   (5 RR 6-21; 9 RR 9,10) Appellant also filed a motion for continuance based on his filing a motion to recuse the Henderson County District Attorney Office that was denied.  (CR 60,64; 5 RR 3)

Appellant pleaded Not Guilty to the felony offense of Evading With A Vehicle before the Jury.  (7 RR 13) The jury, however, found Appellant guilty of

11

the lesser included misdemeanor offense of Evading Arrest pursuant to the Court's Charge. The jury also found an affirmative finding of a deadly weapon. The Judgment reflects Appellant was convicted of the felony offense of Evading With A Vehicle. Appellant elected to have the Court assess punishment, and a Presentence Investigation ("PSI") was ordered. (CR 94) The Court sentenced Appellant to fifteen (15) years in the Texas Department of Criminal Justice, Institutional Division. (CR 93,123) Notice of Appeal was filed on March 30, 2015. (CR 183) The trial court's Certification of Defendant's Right to Appeal was filed April 6, 2015. (CR 192)

## ISSUES PRESENTED

Issue Number One

The Judgment of conviction for the felony offense of evading with a vehicle is incorrect, because the jury convicted Appellant of the misdemeanor offense of evading. (CR 85; 8 RR 65)

Issue Number Two

The sentence of 15 years in prison is outside the range of punishment, because Appellant was convicted of a misdemeanor offense with a maximum punishment of one year in jail. (CR 123)

Issue Number Three

If this Court finds that Appellant was, in fact, convicted of the felony evading arrest with a vehicle, the sentence is void because it is outside the range of punishment, because the State failed to prove the enhancement paragraph alleged in the indictment beyond a reasonable doubt. (10 RR 11-100)

Issue Number Four

The state failed to prove the extraneous offense of theft of an airplane offered at punishment beyond a reasonable doubt. (10 RR 11-19)

Issue Number Five

The state failed to prove the extraneous offense of theft of a diesel tanker truck offered at punishment beyond a reasonable doubt. (10 RR 34-71)

Issue Number Six

The state failed to prove the extraneous offense of Cause No. 12,689 offered at punishment beyond a reasonable doubt. (10 RR 89-09)

Issue Number Seven

The state failed to prove the extraneous offense of Cause No. A,21,075 offered at punishment beyond a reasonable doubt. (10 RR 89-90)

Issue Number Eight

The state failed to prove the extraneous offense of U.S. District Court No. 09-CR-011590001 offered at punishment beyond a reasonable doubt. (10 RR 89-90)

Issue Number Nine

The evidence was insufficient to support a jury verdict of guilty to Evading Arrest With A Vehicle. (7 RR 20-61)

Issue Number Ten

The trial court erred by submitting the *Geesa* definition of "reasonable doubt" to the jury. (CR 85; 8 RR 65)

Issue Number Eleven

The trial court erred in denying appellant's motion for mistrial without conducting a hearing on whether jurors saw appellant being transported in a patrol unit during trial. (8 RR 7-10)

STATEMENT OF FACTS

The following witnesses testified at the guilt phase of the trial:

Henderson County Sheriff Deputy Gray  (7 RR 20)
Henderson County Sheriff Deputy Clements (7 RR 61)
Henderson County Sheriff Investigator Shelley (8 RR 11)

On June 18, 2014, Clements was advised by Richard Atwood that he received a phone call from an unidentified person at the John Deere tractor store in Tyler, Texas stating Appellant was trying to pick up tractor parts for Atwood, and that his pickup was in the parking lot.  (7 RR 24, 62)   Clements also testified she "met" with Atwood on June 17, 2014.  (7 RR 72)  Atwood was Appellant's employer and the alleged owner of a 2002 Black Dodge pickup.  (CR 108; 7 RR 44; 8 RR 51,52)  He did not testify at either stage of the trial.   According to Gray, Atwood stated he may not file charges if Appellant returned the pickup undamaged to Atwood's place of business.  (7 RR 25)

On June 18, 2014, at approximately 11:00  a.m., Clements contacted her partner, Gray, who was parked on Highway 155.  Clements advised Gray the driver may be headed south on Highway 155, and Gray observed the pickup traveling south on Highway 155.  When Gray passed Clements, she began to follow Gray. (7 RR 22-23)   Gray's only description of the driver was a "white male, alone."  He could not see what the driver was wearing.  (7 RR 24) Clements also testified the driver was a white male.  (7 RR 64)   Gray followed the pickup

14

until he lost sight of it, and then he and Clements followed tire tracks into a wooded area and located the pickup. No driver or keys were located in or around the pickup. (7 RR 29) Other officers were dispatched to assist Gray and Clements in the search for the driver after the pickup was located. (7 RR 31) No one witnessed Appellant driving the pickup during the pursuit or exiting the pickup.

According to Gray and Clements, Appellant was driving recklessly and others could have been endangered. Gray did testify the pickup was never directed at him in a dangerous manner, and there were no personal injuries. (7 RR 47, 80)

Shelley was dispatched, and he searched for the driver about an hour. (8 RR 33) He saw Appellant on the front porch of a metal building on a county road, but did not know how long he had been there. (8 RR 15) Shelley testified when he began to pull into the next driveway, Appellant ran into heavy brush. When Shelley identified himself and ordered Appellant to come out, he did and was arrested without incident. (8 RR 16, 17)

Videos of the pursuit from the patrol units of Gray and Clements were admitted and shown to the jury. (7 RR 33, 76-77)

A set of vehicle keys were found in Appellant's possession during booking at the jail, one with a Dodge Ram emblem. (7 RR 43) There was no evidence the keys fit the subject pickup, or if the keys found on Appellant were given to the person designated by Atwood to pick it up from the Sheriff's Office.

A Whataburger receipt dated June 18, 2014 stamped at 10:47 a.m. and a Kroger receipt dated June 18, 2014 stamped 8:46 a.m. were found in the pickup. There was also a check made payable to Appellant from the Henderson County Jail, clothes, and two cowboy hats. (8 RR 20; 12 RR State Ex. 14-18) Shelley testified the pursuit was called in at approximately 11:00 a.m. on June 18, 2014. (8 RR 21)

Shelley obtained videos from Whataburger and Kroger that were shown to the jury. (8 RR 23-29) The Kroger receipt was dated June 18, 2014, however, the video was dated June 17, 2014. Exhibit No. 22 is a photograph from the Whataburger video showing Appellant at the drive-through approximately 20 minutes prior to the pursuit of the pickup. (12 RR Ex. 22) Shelley stated Appellant was driving the subject pickup in the Whataburger video, but the license plate was not visible, and there was no evidence it was the same pickup. Exhibit No. 21 is a photograph from the Kroger video of Appellant leaving the store. (8 RR 29; 12 RR Ex. 21). Shelley testified it was not possible for Appellant to have walked or ran from the location of Whataburger to the front porch of the building in the time frame; and that he saw no other vehicles that may have driven Appellant to that location. He also state that he had no idea how long Appellant may have been on the porch, and that it was possible another had dropped him off. (8 RR 41,56)

During the guilt phase, Appellant was being transported to the courthouse in a marked unit and saw three jurors. Appellant advised the Court and requested a mistrial that was denied. (8 RR 7-10)

The Jury Charge included the *Geesa* definition of beyond a reasonable doubt. Appellant did not object. (CR 85)

The Court's Charge instructed the jury that Appellant was charged with the offense of "Evading Arrest," a Class A Misdemeanor. (CR 85) On page two, the application paragraph states:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day of June, 2014, in Henderson County, Texas, the defendant, Joshua Paul Calhoun, did then and there, intentionally flee from Spencer Gray, a person Joshua Paul Calhoun knew was a peace officer who was attempting lawfully to arrest or detain Joshua Paul Calhoun, then you will find defendant guilty as charged in the indictment. (CR 86)

The verdict form also instructed the jury to find Appellant guilty or not guilty for the offense of "evading arrest, as charged in the indictment." The jury found Appellant guilty of the misdemeanor Evading as instructed by the Court, but the Judgment reflects a felony (CR 123) A PSI was ordered due to Appellant's election for the Court to assess punishment. (CR 94, 6 RR 25-26) The Court sentenced Appellant to 15 years in prison which is beyond the maximum punishment for a Class A Misdemeanor (one year in jail).

17

## Punishment Phase

At the punishment phase, the State introduced three state certified copies of prior convictions and one federal with three amended copies of the judgment. Only two of the State convictions included a fingerprint. No print comparisons were done. (12 RR Ex. 4,5,6,7)

There is nothing in the record showing the enhancement paragraph was read to Appellant or that any pronouncement was made of the trial court's finding. The Judgment, however, shows a finding of True. (CR 123)

The State called seven witnesses. Over Appellant's objection, Reynolds testified regarding the case of a stolen airplane from the Athens Airport, which had been dismissed. (10 RR 11) Sandoval testified regarding the federal conviction for Flight From An Immigration Checkpoint. (10 RR 19) Mitchell testified about a pending indictment concerning a stolen diesel tanker truck from Louisiana that was found in Henderson County, Texas. (10 RR 34) Ainsworth from the Greenwood, La. P.D. was called to testify that he investigated the tanker truck. (10 RR 42) Rodgers aka "Wild Bill" testified he was an acquaintance of Appellant's and saw Appellant driving a tanker truck on October 31, 2014. Appellant told him someone gave him the truck and wanted Rodgers to help him "cut it up." (10 RR 50) Dunnington was from the Henderson County Sheriff's Office. That testimony concerned his investigation regarding the tanker truck in

18

Henderson County; that he had pursued the vehicle; the driver fled and was not apprehended. (10 RR 59) Investigator Shelley who testified at the guilt phase also testified at punishment regarding his investigation on the instant case, and how he connected Appellant to this case from the tanker truck incident. (10 RR 71)

Reynolds, Sandoval, "Rodgers," and Shelley identified a person in the courtroom, however, the record is devoid of any evidence that the person identified by any of them was Appellant. (10 RR 13, 29, 53) Ainsworth, Mitchell and Dunnington did not identify anyone.

Appellant called Phillip Walker, the probation officer who prepared the PSI. Walker had met Appellant only once before the PSI. (10 RR 91) He stated Appellant was cooperative, and he did not have a reason to doubt what he told him. Walker spoke with Atwood and confirmed the conversation on page three of his report that Atwood did not want Appellant to go to prison for 20 years. (10 RR 92,93,99; CR 106) Walker also confirmed Appellant had once been diagnosed with ADHA and Bipolar conditions. On cross-examination he testified Appellant tried to minimize his role in the current offense, and that his federal parole officer said Appellant did not comply with his conditions of supervised release. (10 RR 96,97) Walker discussed Appellant's drug history, and stated it was unlikely he would be successful on probation. (10 RR 98)

## SUMMARY OF ARGUMENT

### The Felony Conviction and Sentence are Void

Appellant was indicted for the felony offense of Evading With A Vehicle, a Third Degree Felony, enhanced to a Second Degree Felony, as stated in the Judgment. The Jury, however, found Appellant guilty only of the lesser included misdemeanor offense of Evading Arrest. The opening paragraph of the Court's Charge advises the jury that Appellant was charged with the misdemeanor offense of Evading Arrest. Paragraph 1. advises the jury how one commits the felony offense of Evading With A Vehicle. More importantly, the application paragraph that authorizes a jury to convict instructs the jury to find Appellant guilty of the misdemeanor offense of Evading Arrest if they believed the State's evidence beyond a reasonable doubt. The State did not object. Appellant did not object, probably because it was a misdemeanor. The record is silent as to why the misdemeanor offense was included. Moreover, because the jury was instructed to find Appellant guilty of a misdemeanor if they believed the evidence beyond a reasonable doubt, the deadly weapon finding cannot and does not enhance punishment.

Despite the fact the verdict form states "as charged in the indictment," the jury was only authorized to convict Appellant of the misdemeanor according to the application paragraph. The felony conviction is void. The sentence of 15 years in

prison is void, because it is outside the range of punishment for a Class A Misdemeanor. Appellant is currently incarcerated on the 15-year sentence when he was convicted of a misdemeanor.

This is not a fundamental charging error. The application paragraph was correct, and there was evidence in Shelley's testimony that Appellant fled from him on foot from the front porch. There is no question that the misdemeanor in the application paragraph was a lesser included offense. The indictment against Appellant for the felony Evading Arrest With A Vehicle alleges all of the elements of the lesser-included offense of evading arrest.

Sufficiency

If the Court finds the jury did convict Appellant of the felony offense, there is a sufficiency issue. The State failed to produce any witness that saw Appellant driving the pickup during the pursuit, or exiting afterward. Any evidence the State did produce to prove Appellant was the driver was circumstantial at best and insufficient.

The Court allowed Appellant to represent himself during the guilt phase of the trial with standby counsel. At punishment, however, the Court appointed standby counsel to represent Appellant. To be clear, Appellant makes no claims of ineffective assistance at either stage of the proceedings. It is a huge risk to represent oneself, and those risks were knowingly accepted by Appellant.

The State has no duty to assist a *pro se* defendant, or to "go easy," or even to cease its objections. It does, however, have the duty of seeking justice rather than a mere conviction. At what point in time does the cumulative effect of going beyond the realm of fairness at trial become too much?

Among other issues, the State never identified Appellant as the driver during the pursuit; never called the alleged owner of the vehicle; failed to produce fingerprints, DNA, photo lineups or any other evidence that would have been easily obtainable; failed to prove the keys found on Appellant were the keys to the pickup; allowed the *Geesa* definition of beyond a reasonable doubt in the jury charge; called a witness on punishment regarding a case the State knew had been dismissed when it was unnecessary; failed to prove prior convictions with fingerprint comparisons; failed to prove the enhancement paragraph in the Indictment beyond a reasonable doubt; and failed to prove the extraneous offenses beyond a reasonable doubt as required in non-capital felonies.

### *Geesa* Definition

The definition for "beyond a reasonable doubt" was both criticized and disapproved several years ago. Admittedly, if the parties agree, there is no error to include it, although the Courts state the more appropriate action is not to do so. Appellant did not object to the inclusion of the definition, but that is not an agreement of the parties. It is merely an omission to act. A lawyer trying a case

22

against a nonlawyer is, at best, frustrating. This is never more evident than in the criminal arena. Logic dictates, therefore, that the lawyer would be on "high-alert" in an attempt to ensure the accuracy of the proceedings. The trial judge is not an advocate--he's a judge. Judges, rightly or wrongly, often look to the lawyers in proper drafting of documents and other legal issues. Including the *Geesa* language in a charge has been criticized and disapproved in many cases, and remains so today.

### Motion for Mistrial

The trial court exhibited a certain amount of leniency and patience with Appellant representing himself in this case. Denying Appellant's motion for a mistrial, however, may have prejudiced Appellant beyond repair. To ask three jurors if they had seen Appellant that morning before court would not have interfered with the proceedings. All 12 jurors were not involved. A 15-minute hearing could have determined if those three jurors were so biased, if they did see Appellant in the patrol car, they could no longer be fair to Appellant.

### ARGUMENTS & AUTHORITIES
### Issues Number One and Two

Appellant combines the argument and authorities relating to Issues Number One and Two for purposes of efficiency.

Appellant was indicted for Evading Arrest With A Vehicle, a third degree felony. The Indictment included an enhancement paragraph alleging a prior

conviction which if proven would enhance punishment to that of a second degree felony. The Judgment reflects that Appellant was found guilty by the jury of Evading Arrest w/Motor Vehicle and sets out the purported verdict of the jury as follows "We, the jury, find the Defendant, Joshua Paul Calhoun, guilty of Evading Arrest w/Motor Vehicle, as charged in the indictment. /s/ Raynell Johnson, Foreperson." The Judgment also reflects that Appellant pleaded true to the enhancement allegation, that the trial court found the enhancement allegation true, and assessed punishment within the second degree range at 15 years confinement in prison. CR 123-125. Appellant is currently confined in prison pursuant to this Judgment of conviction and sentence.

The Judgment is not only factually erroneous, the purported felony conviction and sentence are void, because the jury did not find Appellant guilty of the felony offense of Evading Arrest With A Vehicle. The jury found Appellant guilty of the only offense authorized by the trial court's instructions, which was the Class A misdemeanor offense of Evading Arrest.

The trial court's charge to the jury must contain at least one application paragraph. The "application paragraph" applies the abstract law to the particular facts of the case. Any conviction not expressly authorized by the application paragraph is void. *Plata v. State*, 926 S.W.2d 300 (Tex. Crim. App. 1996),

overruled on other grounds by *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997).

The application paragraph in this case instructed the jury as follows: "Now, if you find from the evidence beyond a reasonable doubt that on or about the 18[th] day of June, 2014, in Henderson County, Texas, the defendant, Joshua Paul Calhoun, did then and there, intentionally flee from Spencer Gray, a person Joshua Paul Calhoun knew was a peace officer who was attempting lawfully to arrest or detain Joshua Paul Calhoun, then you will find defendant guilty as charged in the indictment." This application paragraph contained all the essential elements of the offense of Class A misdemeanor Evading Arrest as defined by Section 38.04 of the *Texas Penal Code* and was a clear and unequivocal instruction to the jury authorizing conviction of the misdemeanor offense only. The actual verdict of the jury, which is different than what is set out in the judgment, was "We, the Jury, find the Defendant, Joshua Paul Calhoun, guilty of Evading arrest as charged in the indictment. /s/ Raynell Johnson."

Appellant had been indicted for the felony offense of Evading Arrest With A Vehicle. Section 38.04(b)(2)(A) of the *Texas Penal Code* provides that the offense is a felony of the third degree if the actor uses a vehicle while the actor is in flight. The use of the vehicle is an essential element of the felony charge of Evading Arrest With A Vehicle. See *Calton v. State*, 176 S.W.3d 231 (Tex. Crim. App.

2005).  The trial court must instruct the jury regarding all essential elements in the application paragraph to authorize a conviction for the offense.  The reference in the application paragraph to "as charged in the indictment" does not suffice to establish the instruction as authorizing a conviction for felony evading arrest with a vehicle.  And the reference in the jury's verdict to "as charged in the indictment" does not suffice to establish a conviction for the felony evading arrest with a vehicle.  The language "as charged in the indictment" does not supplant the necessity of including all essential elements in the application paragraph. *Escort v. State*, 621 S.W.2d 608 (Tex. Crim. App. 1981); *Bradley v. State*, 560 S.W.2d 650 (Tex. Crim. App. 1978).

These are issues of an erroneous judgment of conviction that does not comport with the jury's verdict and a sentence that is void because it is outside the range of punishment for the offense of conviction.  This is not an issue of fundamental charging error as the State may argue. The application paragraph was a proper instruction on the lesser-included misdemeanor offense of evading arrest.

Generally a two-step analysis is used in determining whether an instruction on an uncharged offense may or should be given.

The first step is to determine if the uncharged offense is a lesser-included offense of the charged offense under Article 37.09(1) of the *Texas Code of Criminal Procedure*.  Under *Hall v. State,* 225 S.W.3d 524 (Tex. Crim. App.

2007), this determination is made using a cognate-pleading approach. An offense is a lesser-included offense of another offense if the indictment for the greater inclusive offense alleges all of the elements of the lesser-included offense. *Ex parte Wilson* 306 SW 3d 259 (Tex. Crim. App. 2009)(op. on reh'g). The indictment against Appellant for evading arrest with a vehicle alleges all of the elements of the lesser-included offense of evading arrest.

If the uncharged offense is a lesser-included offense under the analysis above, the court proceeds to the second step. The second step focuses on the evidence before the jury. If a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser-included offense then the instruction is warranted. *Skinner v. State*, 956 S.W. 2d 532 (Tex. Crim. App. 1997). *Sweed v. State,* 351 S.W.3d 63 (Tex.Crim.App. - 2011).

The evidence before the jury certainly warranted an instruction on the lesser included-offense of evading arrest due to Shelley's testimony that Appellant fled from him when Shelley observed Appellant on the front porch. (8 RR 16,17)

Article 36.14 of the *Texas Code of Criminal Procedure* requires the trial judge to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex.Crim.App. 2007). The lesser-included charge of misdemeanor evading arrest is part of the law applicable to the case and was warranted under the evidence. The actual

27

language of the application paragraph was a proper instruction on the offense of Evading Arrest. The instruction was included in the Court's Charge without objection from the State and without objection from the Appellant. There was no error in submitting the instruction.

The error is the Judgment of conviction of felony Evading Arrest With A Vehicle when such conviction was not authorized by the application paragraph of the trial court's charge. The error in the Judgment of conviction then lead to an illegal sentence of imprisonment for 15 years on a Class A misdemeanor. This Court is obliged to strike down any conviction not actually authorized by an application paragraph of the trial court's charge to the jury. *Plata, supra.*

The Judgment should be reformed to reflect conviction of the Class A misdemeanor of Evading Arrest and the case should be remanded to the trial court for a new punishment hearing with assessment of a sentence within the statutory range of punishment.

### Issues Number Three, Four, Five, Six, Seven and Eight

Appellant combines the argument and authorities relating to Issues Number Two, Three, Four, Five, Six, Seven and Eight for purposes of efficiency.

### Enhancement

If the Court finds the evidence sufficient on the felony offense, and that the Judgment and sentence are not void, Appellant argues the State failed to prove the

enhancement alleged in the indictment. There is nothing in the record showing Appellant was read the enhancement paragraph contained in the Indictment, that he pleaded "true" or "not true," or that he stipulated to the enhancement. There was no finding by the trial court that the enhancement was true, however, the Judgment contains such a finding. (CR 123) There is a line of cases that state when the court assesses punishment, the enhancement paragraph need not be read to the defendant, and the defendant does not have to enter a plea. *Reed v. State,* 500 S.W.2d 497 (Tex.Crim.App. 1973). In the majority of cases relying on *Reed*, however, there was a stipulation or plea of true by the defendant, as was in *Reed.* That is not the case here. Even the *Reed* Court noted that:

> In the instant case the penalty stage of the bifurcated trial was before the court alone and we find nothing in Articles 36.01 and 37.07, Vernon's Ann.C.C.P., or any other statute which mandatorily requires the reading of the enhancement portion of the indictment to the defendant and receiving his plea, *though such is the better and accepted practice and is to be commended.* Id. at 499. [Emphasis added.]
> . . . .
>
> Despite the holding today, it is to be hoped that trial judges and prosecutors will make every effort to see that enhancement portions of an indictment are read to the defendant and his plea obtained at the penalty stage of the trial and simply avoid questions such as this one. Id. at 500.

If the record does not affirmatively establish that a defendant pleaded "true" to enhancement allegations, as here, an appellate court will analyze the case as if the defendant pleaded "not true"; thus, the court will sustain the enhancements only if the record establishes that the State met its burden to produce sufficient

evidence that the enhancement allegations were true. *Wise v. State,* 394 S.W.3d 594, 598, 600 (Tex.App.-Dallas 2012)

The State introduced a certified copy of Cause No. A,10,030, Order Revoking Community Supervision and Imposition of Sentence ("Order") dated March 17, 2004, the offense alleged in the enhancement paragraph. (10 RR 89) Although it contained a "fingerprint page," the State did not compare that print to Appellant's.

The Order states the original offense date was June 29, 2000, probation was granted May 18, 2001, the date of the revocation March 17, 2004, and the offense Theft Over $20,000. The PSI does not show any theft offense in the criminal history with the dates of June 29, 2000 or March 17, 2004, or with Cause No. A,10,030. (CR 103) The state failed to call any witness to testify about this case.

In *Flowers v. State,* the Court examined the proof required by the State to prove an enhancement:

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. No specific document or mode of proof is required to prove these two elements. . . . . [T]he State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence

30

of a prior conviction and the defendant's identity as the person convicted. 200 S.W.3d 919 (Tex.Crim.App. 2007).

In *Flowers*, the State produced a certified copy of defendant's driving record and computer printout from the jurisdiction, because the file was missing. Both documents had exhaustive identifiers that the defendant was the same person. Id. at 921. The revocation order in Appellant's case has a name and a fingerprint-- which the State failed to compare to Appellant's. There were no fact witnesses regarding the Theft Over $20,000 offense alleged in the enhancement paragraph. There was no probation officer who identified Appellant as the one being convicted, on probation, or revoked. There was no evidence as to what was stolen or who the complainant might have been.

The concurring opinion in *Flowers* should be noted:

 When allowing use of non-traditional resources, courts must exercise great care in assuring that the defendant is sufficiently connected to the prior conviction.
. . . .
*Clearly, we must not depend only on a name or even a name and a birth date.* An inexhaustive list of factors that might be considered includes: full name, date of birth, Social Security number, what the prior offense was, the place and date of the prior offense, the date of conviction, testimony about the prior conviction from a corrections, parole, or probation officer, or the prosecutor of the prior conviction. However the information is produced, it must sufficiently connect the defendant to the prior offense. Id. at 925. [Emphasis added.]

In *Schroeder v. State,* Nos. 13-13-00379-CR, 13-13-00380-CR (Tex.App. - Corpus Christi April 9, 2015) (not designated for publication), this issue was once again reviewed:

> We find that the evidence was insufficient to link Schroeder to the prior convictions. We note that it is not enough for the State to prove that it is "unlikely" that someone other than Schroeder was convicted of the offenses as evidenced by the exhibits; instead, the State must establish *beyond a reasonable doubt* that Schroeder was convicted of those offenses. *[cite omitted*.] Here, none of the documents in either exhibit contain any identifying characteristics that match those of Schroeder other than her first and last names.

In *Wood v. State,* 453 S.W.3d 488 (Tex.App.- San Antonio 2014), defendant was charged for Evading With A Motor Vehicle with one enhancement in the indictment, as here. There was no plea of "true" or "not true" in the record, nor was there any objection by defendant. *Wood* is somewhat different in that the State failed to produce any documents at all, however, the rule of the case remains the same:

> Without a plea of " true" in the record, we proceed with our analysis by determining whether the State met its burden of proof on the enhancement allegation. Id. at 491.

*Wood's* case was reversed.

Absent the enhancement, and if this Court finds Appellant was convicted of the felony Evading Arrest With A Vehicle, the punishment range would have been a Third Degree Felony, 2-10 years in prison. Appellant was sentenced to 15 years in prison. (10 RR 104)

32

Nowhere in the record does the State prove Cause No. A,10,030 beyond a reasonable doubt. A sentence which is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal. *Ex parte Rich*, 194 S.W.3d 508 (Tex.Crim.App. 2006). The sentence should be reversed and this case remanded to the trial court for a new punishment hearing.

Extraneous Offenses

If the Court finds the evidence sufficient on the felony offense, and that the Judgment and sentence are not void, Appellant argues the State failed to prove the extraneous offenses and prior convictions beyond a reasonable doubt.

Evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried and any other evidence of an extraneous crime or bad *act that is shown beyond a reasonable doubt* by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. *Tex. Code Crim. Proc.* art. 37.07(a)(1) [Emphasis added.]

An extraneous offense has been defined as "any act of misconduct, whether resulting in prosecution or not, that is not shown in the charging papers." *Dennis v. State,* 178 S.W.3d 172 (Tex.App. - Houston [1st Dist.] 2005).

Most of the cases arguing proof of extraneous offenses cite *Smith v. State,* 227 S.W.3d 753 (Tex.Crim.App. 2007). *Smith* holds the trial court may consider any relevant punishment evidence including that contained in a PSI which the law allows. *Tex. Code Crim. Proc.* art. 37.07(a)(1), 37.07(3)(d). In *Smith*, the objected to evidence was medical records contained in the PSI. The probation officer who prepared the PSI testified regarding the medical records that were contained in both her file and the report. Id. at 756. The trial court had specifically requested that the medical records be included when the report was ordered. Id. at 755.

Other than the enhancement contained in the Indictment, the State produced the following:

> 12,689 Theft SJF
> Revocation of Probation Upshur County, Texas with a fingerprint.
> (10 RR 89) There was no fingerprint comparison.
>
> A-21-075 Theft Over $1,500
> Adjudication of Guilt and Revocation of Probation Henderson County, Texas. No fingerprint in document. (10 RR 89)
>
> 09-CR-011590001 High Speed Flight From Immigration Checkpoint U.S. District Court Judgment. No fingerprint. (10 RR 89) Exhibits 5-6-7 were amended copies of the federal conviction. (10 RR 89)

<u>Michael Reynolds - Athens P.D. (10 RR 11-20)</u>

Reynolds' testimony was allowed over Appellant's objection for the reason the case about which he testified was dismissed, which was verified by the State. (10 RR 12-13)  This case was included in the State's Extraneous Notice.  (CR 54)

On March 4, 2009, Reynolds was contacted regarding a stolen airplane from the Athens airport that had crashed at another location.  He interviewed "the person in custody," but did know the person's name.  It was Appellant.   Reynolds stated Appellant said he purchased the airplane, but that the owner told Reynolds Appellant did not have permission to fly the plane.  Appellant was arrested, but it was dismissed, arguably for lack of evidence.  (10 RR 14-15)   The State acknowledged this case was dismissed.  (10 RR 12-13)   Reynolds identified someone in the courtroom as the person he interviewed regarding the airplane, but the record does not state if it was Appellant.  (10 RR 13)  It was not proven beyond a reasonable doubt that Appellant stole the airplane.

When the State is seeking a conviction, they must and should be zealous in doing so, even when a defendant is *pro se.*  They produced six other witnesses who testified to extraneous offenses, albeit none were proven beyond a reasonable doubt.    Failing to prove these extraneous offenses deprived Appellant of due process of the law.  The most significant article in the *Texas Code of Criminal Procedure* is that a prosecutor's primary duty is "not to convict, but to see that

justice is done." Id. art. 2.01. The State can obtain the same conviction by offering sufficient proof to ensure the accuracy of criminal proceedings. There was no reason for the State to call Reynolds to testify about a case the State knew had been dismissed.

It is not unreasonable to wonder if the "stolen airplane case" was instrumental in the Court's sentence of 15 years. The PSI references the following: "3/4/09, Henderson County, Theft $100,000<$200,000, Dismissed Charges dropped by arresting agency." If such reference is this airplane incident, there are no facts included. (CR 103) The State still has the duty to prove extraneous offenses beyond a reasonable doubt. It should also be noted that the State argued the airplane case in closing: "and also his history of not only starting and flying a plane, but crashing a plane..." (10 RR 100)

<u>Cynthia Sandoval - Border Patrol (10 RR 20-34)</u>

Sandoval testified Appellant fled from the Falcon Port of Entry Checkpoint where she worked on July 23, 2009. On cross-examination she said she could not remember the date and thought it was the 9th. (10 RR 30) She was suspicious, because he was not from the area, and it was a slow time frame for them for "regulars." Sandoval said he told her was a doctor. (10 RR 28) Her assistant received an alert when he was running a check that Appellant was "armed and dangerous." That meant he had to be removed from the vehicle and patted down.

She stated he stepped out of the vehicle and then got back in and tried to drive away. According to Sandoval, she was trying to get him to turn off the motor, and he dragged her with his car about 30 feet while they were struggling. Her arm was bruised, but she did not seek medical attention. He was apprehended "from inbound." She testified at his trial. (10 RR 26-29)

When the State asked her if she saw "Mr. Calhoun" in the courtroom, she identified a man wearing a blue jumpsuit. There is nothing in the record stating the person she identified was Appellant. (10 RR 29) This was the federal case admitted as Exhibit No. 4. The documents in the federal case do not contain a fingerprint. The only information in the documents on the defendant in that case is the name (Joshua Calhoun), the last four digits of a social security number, a year of birth, and an address. The State produced no evidence to link any of that information to the Appellant. He was not proven to be the person convicted in U.S. District Court No. 09-CR-01159-001 beyond a reasonable doubt.

After the witnesses testified, the State offered all of the certified copies of the extraneous offenses. Appellant objected to the admission of the federal Judgments on the basis the State did not "properly prove up the federal charge," to which the State responded "We don't have to." Appellant then objected because the State did not prove it was "the same person." The State argued the documents were admissible because they "have a certification by the federal government" and

"are admissible under 37.07, and *Texas Rules of Evidence* 902." The Court admitted the Judgments. (10 RR 89-90; 12 RR State Ex. 4,5,6,7) A document being certified does not prove identity, and it does not relieve the State of its burden of proving Appellant was the same person convicted in the federal case and all the others.

Derek Mitchell - Operations Manager, Pilot Flying J Travel Centers, Louisiana (10 RR 34-42)

This testimony was allowed over Appellant's objection that this case is pending indictment. (10 RR 35) On October 31, 2013, Mitchell received a call from one of his drivers that a tractor trailer with a diesel tank was missing in Greenwood, Louisiana. Through the GPS system, it was tracked to Athens, Texas. The truck was returned, but it was damaged. (10 RR 37) In response to the State's questions if "Joshua Paul Calhoun" ever worked for his company or if he gave "Joshua Paul Calhoun" permission to drive the tanker, he responded "no" to both. (10 RR 39) Mitchell did not identify Appellant. He had no information about Appellant.

Kevin Ainsworth - Greenwood, Louisiana P.D. (10 RR 42-50)

On October 31, 2013, Ainsworth was dispatched to the Flying J truck stop about one vandalized truck and possibly one stolen tractor trailer. The vandalized truck looked as though someone had attempted to hotwire it. They tracked the

missing truck through the GPS system to Athens, Texas. He contacted a deputy in Athens who advised him the driver of the truck had fled. (10 RR 43-46) The owner of the truck found in Athens identified it as the stolen one. (10 RR 49) Ainsworth did not identify Appellant, nor did his testimony create any link to Appellant.

William Rodgers AKA "Wild Bill" -
Acquaintance of Appellant  (10 RR 50-59)

Rodgers knew Appellant as a "neighborhood kid" who had done some work for him and believes his last name is Calhoun but just knew him as "Josh". (10 RR 51, 57) Rodgers testified he saw Appellant driving a 1996 Peterbilt white large truck, with a 20,000 gallon tank, on October 31, 2013 and was at Rodgers' home. Other than the date of October 31, 2013, there was no time frame. There was no evidence what time the tanker was taken from Louisiana or what time Appellant was seen in a "large truck" at Rodgers' house. This is important to determine if the driver of the stolen tanker would have had time to arrive at Rodgers' home when he did. He stated that what he knew was "according to the story," and that "I really don't know anything." The credibility of his testimony was, therefore, questionable (10 RR 51,52,57) He continued to state that Appellant wanted Rodgers to help him "cut the truck up," but Rodgers refused, because he "believed he belonged to Jesus Christ." Rodgers said Appellant told him someone gave Appellant the truck. About 15 minutes after Appellant left, the County came.

Rodgers called Appellant and tried to warn him, but there was no answer. (10 RR 52, 55) According to Rodgers, Appellant told him that Appellant and another person were involved in an insurance scam. Rodgers identified Appellant in a photo lineup with Shelley, but did not state when, where, or how. The photo lineup was not offered, and there was no evidence that the manner in which it was displayed was appropriate. There is no evidence Rodgers identified the truck as the one he allegedly saw Appellant driving. Rodgers also testified he did not know about any other thefts Appellant "had done." (10 RR 58) The State asked Rodgers "Is that Joshua Calhoun we are talking about the same one sitting here in the courtroom?" to which he responded "Yes, ma'am." There is nothing in the record to indicate which person he identified. (10 RR 53-54)

<u>Tracy Dunnington - Henderson County Sheriff Office</u> (10 RR 59)

On October 31, 2013, Dunnington received a call from Ainsworth at the Greenwood P.D. in Louisiana about a stolen tanker truck and gave the location of it in Henderson County. Dunnington went to the location, but the tanker was gone. The person at that residence is called "William," but Dunnington stated he is known as "Wild Bill." Rodgers only knew the person who had been there with the tanker as "Josh", and did not give Dunnington a last name. Ainsworth was coordinating with Dunnington with various GPS locations of the truck. He then saw it on the highway and attempted to make a traffic stop for running a stop sign.

The truck did not stop, and both of their speeds were up to 60 mph. Dunnington had his lights and siren activated. He followed the truck for about two miles. The truck made a left turn, and became stuck in a ditch. The driver ran from the truck, and Dunnington tracked him for about an hour. The driver's description was a male, 5'6"-5'10," moustache, ball cap, plaid shirt, blue jeans and boots, but Dunnington did not see the driver's face. There was no evidence about Appellant's height. The driver was never apprehended. Dunnington did not identify Appellant. (10 RR 60-67)

Investigator Shelley - Henderson County Sheriff Office  (10 RR 71)

On November 12, 2013, Shelley reviewed Dunnington's report on the stolen tanker truck. Shelley remembered Dunnington had spoken with Rodgers about a "Josh" in another case. Because of Gray's report regarding "Joshua Calhoun," and the fact the two pursuits ended in the same general area, Shelley investigated further, and presented Rodgers with a photo lineup, in which Rodgers identified Appellant. (10 RR 71-74)  Again, no evidence was produced regarding the credibility of the photo lineup. There was no testimony from Shelley or any other witness that Rodgers identified the truck they found as the one he said Appellant was driving on October 31, 2013. Shelley made the following identification of a person in the courtroom:

> . . . .A. Yes, he made a selection. [from the photo lineup]
> Q. Which person did he select?

A. Joshua Paul Calhoun.
Q. Is that the same Joshua Paul Calhoun that you placed under arrest on June 18th?
A. Yes.
Q. Is he present in the courtroom?
A. Yes.
Q. Please point him out and identify an article of clothing he is wearing.
A. Sitting here at the end of the table wearing a jail uniform.    (10 RR 75)

There is nothing in the record to indicate which person he identified.  The record is silent as to how many persons were in the courtroom wearing "jail uniforms."   It is not uncommon for other defendants to be in the courtroom for various reasons.  Shelley interviewed Appellant about the tanker truck, and he denied any involvement, and told Shelley that "Wild Bill" was mentally unstable. (10 RR 76-77)    There was no sufficient link proven between this incident and Appellant, and certainly not beyond a reasonable doubt.

During cross-examination, Appellant's counsel asked Shelley if he was aware of any other *convictions* Appellant had for evading either on foot or with a vehicle.  He responded "no."  (10 RR 81)  On redirect examination, the State argued Appellant opened the door to other circumstances.  (10 RR 84 Line 23) The State claimed Appellant "didn't ask just specifically about convictions," which is clear from the record he did.  Appellant's objection was overruled, and the witness was allowed to testify regarding another extraneous alleged incident with other officers that he said were trying to execute a warrant, and Appellant fled. (10 RR 84)  Appellant's objection should have been sustained.  This also may have

contributed to Appellant's sentence of 15 years in prison. Shelley's testimony did not prove this allegation beyond a reasonable doubt.

This case should be remanded to the trial court for a new trial on punishment.

Issue Number Nine

If the Court finds the judgment and sentence are not void, Appellant argues the evidence was insufficient as to the felony offense of Evading With A Motor Vehicle.

In a sufficiency claim, the Court views all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. at 318, 99 S.Ct. 2781 (1979). The evidence sufficiency standard of review is the same for both direct and circumstantial evidence. The State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt. *Wise v. State*, 354 S.W.3d 900 (Tex.Crim.App. 2012).

A person commits the offense of Evading Arrest or Detention if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him. *Tex. Penal Code* Sec. 38.04.

At the guilt-innocence phase of the trial, the State failed to produce any witness who identified Appellant as the driver of the alleged stolen pickup. Investigator Shelley, Henderson County S.O., was the sole witness who identified Appellant as "Joshua Calhoun" and as the person he arrested for this offense -- but not the person who was driving the pickup, to-wit:

.... Q. [BY THE STATE]        Now, the man that you arrested was named Joshua Calhoun; is that correct?
A.      That's correct.
Q. Do you see him present in the courtroom today?
A. I do.
Q. If you would point him out to the jury and identify an article of clothing he is wearing.
A. He is sitting right here wearing a navy suit and has a full beard.
Q. Now, is there anything different as far as his facial hair? I think you said it.
A. Yes.
Q. But you are still sure that's who you arrested that day; is that right?
A. Yes.
.... (8 RR 36)

The record is devoid of any ruling by the Court, or any other evidence, that shows the person Shelley identified was, in fact, Appellant. From this record, it is impossible to discern what person in the courtroom was identified.

On June 17, 2014 Deputy Clements met with Richard Atwood who advised her his 2002 Black Dodge pickup was spotted in Tyler, Texas. She also testified she spoke to him on June 18, 2014. (7 RR 62,72) Atwood told Clements that an unknown person called him from the John Deere Tractor Store in Tyler, Texas, stating Appellant was trying to pick up some tractors parts for Atwood, and that his

pickup was in the parking lot. Atwood told Clements he felt "Josh" was there attempting to pick up the tractor parts Atwood ordered. (7 RR 63) Atwood said "Josh" would be traveling south on 155 to take the parts back to Atwood's ranch, and, if so, he would think about not filing charges if the pickup was not damaged. (7 RR 24-25) She then notified her partner, Deputy Gray with the information. (7 RR 64)

Gray and Clements were both driving marked units that day. (7 RR 26, 68) They decided that Gray would park on 155 at Coffee City, and Clements would go to County Road 4120. They also had the license number of the 2002 Black Dodge pickup. (7 RR 23)

After approximately eight minutes, Gray observed the pickup. He followed it about half a mile and passed Deputy Clements parked at County Road 4120. Gray testified if the driver of the pickup was going to Atwood's ranch, the driver would have turned on 4120, but kept traveling southbound. (7 RR 25) At that time, the only thing he could see was that the driver was a white male, alone. He specifically stated he could not see what the driver was wearing. (7 RR 24) On cross-examination, he stated the driver appeared to be wearing a white t-shirt -- but that clearly was not his testimony. (7 RR 48) Clements testified all she saw was a white male in the driver's seat. (7 RR 64). State's Exhibit No. 23 is a photograph

of Appellant in the patrol unit after being arrested on the same date. He is not wearing a white t-shirt. (8 RR 29; 12 RR State Ex. 23)

Gray then activated his red and blue lights and followed the pickup for another half mile. When they approached County Road 4222 going West from 155, he activated his siren. Gray and Clements turned on 4222 heading west, and the pickup increased it speed and fled. He informed the dispatchers they were in pursuit and followed the pickup about a quarter of a mile. He thought there was one or maybe two other vehicles on the road. (7 RR 26)

According to Gray, it was a dangerous situation, and the other drivers had to swerve. The indicator on his COBAN in-car video monitor showed he was traveling 90 mph. At County Road 4224, the pickup turned left heading toward Frankston, Texas. Gray radioed dispatch to advise Frankston to be on standby. Clements had been behind Gray since he passed her earlier. They followed 4224 about a mile, and the pickup veered off the road, back onto the road, crossed a bar ditch, and turned through a front yard. (7 RR 27; 12 RR State Ex. 6,7) There was only minor damage to the yard, and the homeowner was not worried about it. (7 RR 51)

Gray advised Clements the pickup was turning around, at which time there possibly could have been a collision between Clements and the pickup. Gray followed the pickup on 4224 about a mile. As he approached a hay meadow with

46

an open metal gate, he saw a glimpse of the pickup on top of a hill. Gray and Clements proceeded through the gate. (7 RR 28)

At that time, they lost sight of the pickup. Gray found fresh tire tracks and followed them through the hay meadow into a wooded area to another hay meadow and found the pickup in another wooded area. (7 RR 41; 12 RR State Ex. 8,9) They did not see anyone inside or around the pickup. The front bumper was damaged. (7 RR 43; 12 RR State Ex. 9) Investigator Shelley testified the damage was caused during the pursuit, but there was no evidence of such. (8 RR 20) It was a couple of minutes from the time they lost sight of the pickup until they located. (7 RR 29) Clements testified she believed the entire pursuit was approximately two to three miles, one direction. (7 RR 64) Due to the nature of the pursuit and not knowing what to expect, both Gray and Clements exited with their A-15 weapons. (7 RR 30, 47, 69) They had no knowledge about any weapons in the pickup or on the suspect. (7 RR 30)

DPS, highway patrol, and Frankston P.D. were trying to locate Gray and Clements and were dispatched to their location for backup. Chief Dan Parker was first on the scene and directed Gray to return to the pickup in case the driver returned. (7 RR 31) The license plate and pickup matched the description of Atwood's pickup. (7 RR 43)

Shelley was dispatched to the location of the pickup, and directed by the Chief to search a section of County Road 4224 for the driver. He patrolled that area for about an hour before seeing someone in the yard of a residence on 4224. (8 RR 15) He was never given a clothing description of the driver. (8 RR 40)

Shelley testified he saw Appellant in the yard of a metal building home, and that Appellant walked onto the porch and sat down. He found it suspicious, because he passed that residence several times and had not seen any vehicles or anyone in the yard. (8 RR 15) He testified Appellant "kind of" turned away from the roadway "to conceal his face." When Shelley turned into the next driveway, Appellant ran toward the tree line into heavy brush, but surrendered himself and fully complied when Shelley identified himself as an officer. (8 RR 16, 17) Appellant identified himself as Joshua Calhoun and was arrested. (8 RR 18)

Shelley admitted he had no idea how long Appellant had been on the front porch before Shelley saw him. (8 RR 41) Shelley's testimony that he had not seen any other vehicles which may have dropped off Appellant at that location is, therefore, meaningless. Someone could easily have driven Appellant to the arrest location from Whataburger prior to Shelley's arrival, or perhaps via a different route.

After Appellant's arrest, Shelley returned to the location where they were processing the pickup. (8 RR 19) In the pickup, they found a check made payable

to Appellant from the Henderson County Jail, receipts from Kroger in Palestine, Texas, and Whataburger in Tyler, Texas, clothes, and two cowboy hats. (12 RR Ex. 19, 20; 8 RR 16, 17, 24) Shelley obtained the videos from Whataburger and Kroger, and both were published to the jury. (8 RR 26; 12 RR Ex. 20; 8 RR 25; 12 RR Ex. 19)

Exhibit No. 17, the Kroger receipt, shows the date of June 18, 2014 at 8:46 a.m. The Kroger video shows June 17, 2014. (8 RR 58-59) The State attempted to explain this significant discrepancy by arguing: "So those technicalities about whether or not a surveillance system has an hour or day wrong is trumped by the fact that you have that receipt with the right date right there." (8 RR 78) The existence of a dated receipt is not evidence the video date is wrong. Appellant could have gone to Kroger, a common grocery store, on June 17, 2014. At closing, the State argued "people lie, circumstances don't." (8 RR 75) The circumstances here are undisputed regarding the different dates. There was no evidence the items listed on the Kroger receipt were found in the pickup or on Appellant.

Gray's in-car video, State Ex. No. 1, was played for the jury without objection. (7 RR 33) The video portrayed the entire pursuit showing speeds of 70, 72, and 83 mph on his COBAN. (7 RR 34) On cross-examination, Gray admitted he did not know how the speed mechanism on his unit was calibrated, and that when it showed 58 mph on the video when Gray was not moving that it could not

be correct.  (7 RR 53, 55)  Cements testified they reached 90 mph on a county road, and that she felt her life was in danger.  (7 RR 65)  Clements' in-car video was offered by the State, admitted, but played for the jury by Appellant.  (7 RR 67-68, 77)

Gray's and Clements' opinions were that the manner in which the pickup was used, i.e. recklessly, constituted a deadly weapon.  (7 RR 38, 66)

No witnesses testified they saw Appellant driving the pickup during the pursuit, or exiting the pickup.  Clements stated she never saw the driver exit the pickup.  (7 RR 80)  Shelley also testified he never saw Appellant driving the pickup during the pursuit.  (8 RR 51, 58)  Gray stated there was no one in the pickup when he found it a couple of minutes after losing sight of it during the pursuit.   (7 RR 29)

Appellant was Atwood's employee.   (CR 108; 7 RR 44; 8 RR 51-52)  There was no evidence showing Atwood had not allowed Appellant to drive his pickup in the past.  If so, this would explain why Atwood was reluctant to press charges, and why he did not want Appellant to go to prison.[1]  (CR 106, 10 RR 93)  It is a logical conclusion Appellant's personal items were in the pickup from previous times.  It would also explain why Appellant may have had a set of keys to the pickup--if the keys were, in fact, those to the pickup.

---

[1] Mr. Attwood told the probation officer that Appellant was not a bad guy, makes bad decisions, and he did not want him to spend 20 years in prison on his conscience.

There were two Whataburger receipts. One is dated June 18, 2014 at 10:49 a.m., the other at 10:47 a.m. (12 RR Ex. 16, 24) Exhibit No. 22 is a photograph from the Whataburger video showing Appellant at the drive-through wearing what appears to be a cowboy hat. (12 RR Exhibit 22)

Based on Shelley's testimony, the State argued Appellant was the driver during the pursuit, because he was seen at the Whataburger approximately 20 minutes prior to the pursuit driving the pickup. (8 RR 28, 29, 35) The license place was not visible on the video, so it is unknown if it was the same pickup. (8 RR 28-29)

The address of Appellant's arrest was never identified. Shelley testified only that it was on County Road 4224. (8 RR 15, 33) The maps the State exhibited to the jury were not explained on the record and not admitted into evidence, therefore, there is nothing for review. (8 RR 33)

It should also be noted the State argued Appellant was guilty, because of the keys found on him when he was booked into the jail. Gray admitted he did not know if they fit the pickup in question. (7 RR 43) This could easily have been proven but was not. There was no evidence the keys in Appellant's possession were the keys to the pickup, or that they were not a second set, especially if Atwood had allowed Appellant use of the pickup in the past.

The law does not require an in-court identification, and it is merely one factor to consider in assessing the weight and credibility of a witness's testimony. *Conyers v. State*, 864 S.W.2d 739, 740 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Identity can be proven by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence. *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)

*Conyers* was an aggravated robbery case. Although the complainant was unable to identify the robber at trial, there was a positive identification of *Conyers* by his employer from the in-store camera photos of the robbery. In Appellant's case, there was absolutely no identification of Appellant as the driver. The Whataburger video did not show the license plate of the pickup Appellant was driving.

In the majority of cases citing *Conyers,* the identification of the perpetrators was proven by other witness identifications, DNA, photos, videos, codefendant testimony, or fingerprints. None of which existed in Appellant's case.

The facts of *Camacho* and *Zuniga* are closest to the facts here, but are easily distinguishable. *Camacho* was a failure to stop and render aid case. Three witnesses gave a detailed physical description of the driver (the driver of our pickup was merely a "while male"); defendant's truck was the same as the one involved and stipulated to at trial; defendant lived near the scene; and, unlike

Appellant, witnesses saw defendant fleeing from the scene. No. 13-10-00369-CR (Tex.App.-Corpus Christi 2011) (not designated for publication).

The facts of *Zuniga* involved a robbery. Again, witnesses identified the defendant as one of the men in the subject car; the car was parked in defendant's driveway and was still warm; defendant was pretending to be asleep but was not and was wearing the same clothes described by a witness. No. 01-09-00715-CR (Tex.App.-Houston [1st Dist. 2011) (not designated for publication).

The State was required to prove that Appellant was the driver of the alleged stolen pickup beyond a reasonable doubt. All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. *Texas Penal Code* Sec. 2.01.

The State failed to produce any fingerprints, DNA, witnesses, photo lineups, or any other evidence to prove Appellant evaded law enforcement in the pickup on June 18, 2014. The identity of Appellant as the driver of the pickup is an element of the charged offense and was not proven beyond a reasonable doubt, and the verdict is contrary to the law and the facts. The conviction should be reversed and a judgment of acquittal entered.

Issue Number Ten

The Court gave the following instruction to the jury pursuant to *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991):

> .... [1] The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant. [*Geesa* paragraph 2]
>
> [2] It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof exclude all reasonable doubt concerning the defendant's guilt. [*Geesa* paragraph 3]
>
> [3] A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. [*Geesa* paragraph 4]
>
> [4] Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. ....
> [*Geesa* paragraph 5] [paragraph numbering added.]
> (CR 87-88; 8 RR 68-69)

In 1991, the Court of Criminal Appeals held for the first time that trial courts must define reasonable doubt in their jury charges, and included the required language.[2] In 2000, the Court reversed its decision:

---

2 [1] All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence

54

We specifically overrule that portion of *Geesa* which requires trial courts to instruct juries on the definition of "beyond a reasonable doubt." We also overrule *Reyes*. [938 S.W.2d 718 (Tex.Crim.App. 1996)] We find that the better practice is to give no definition of reasonable doubt at all to the jury. On the other hand, if both the State and the defense were to agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement. *Paulson v. State,* 28 S.W.3d 570 (Tex.Crim.App. 2000).

The *Paulson* Court further stated that its decision in *Geesa* requiring trial courts to instruct juries on the definition of reasonable doubt was poorly reasoned. Id. at 572. In conclusion, *Paulson* declared:

It is ill-advised for us to require trial courts to provide the jury with a *redundant, confusing, and logically-flawed* definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre- *Geesa* Texas precedent discourages it. Id. at 573. [Emphasis added.]

---

alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

[2] The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.

[3] It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all " reasonable doubt" concerning the defendant's guilt. [CR 88]

[4] A " reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. [CR 88]

[5] Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs. [CR 88]

[6] In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him and say by your verdict " Not guilty." *Geesa, supra.* [Paragraph numbering added.]

The record shows that Appellant did not object to the submission of the *Geesa* definition. The absence of an objection is not tantamount to mutual agreement to include the definition. In *Vosberg v. State,* 80 S.W.3d 320 (Tex.App. -Fort Worth 2002), the Court stated that generally, to preserve error, a party must object. TEX.R.APP. P. 33.1(a). The Court of Criminal Appeals carved out an exception to this general rule for jury charge error in *Almanza v. State.* 686 S.W.2d 157 (Tex.Crim.App.1985) (op. on reh'g) holding that if the defendant does not object to error in the jury charge, to complain about it on appeal he must show the error was fundamental. Id. at 171. Fundamental error in the jury charge is error that is so egregious and causes such harm as to deprive the accused of a fair and impartial trial. Id.

In *Bluitt v. State*, 70 S.W.3d 901, 905-06 (Tex.App.--Fort Worth, 2002, no pet.), an affirmative waiver in the context of jury charge error was reexamined. That Court held the *Almanza* egregious harm test is applicable to both unobjected to jury charge error and affirmatively waived jury charge error where the error complained of constitutes the law applicable to the case.' " Id. at 906.

The *Vosberg* Court found that Appellant's argument regarding whether reasonable doubt should be defined in a jury charge addressed the law applicable to the case; therefore, *Almanza's* egregious harm analysis was applicable despite

Appellant's affirmative waiver of error, if any. *Vosberg, supra* at 322.       The

Court held the trial court did not err in submitting the instruction on reasonable

doubt, but the *Vosberg* instruction included only paragraph three.   Appellant's jury

charge included *Geesa* paragraphs both three and four.[3]

In *Matthews v. State,*  02-14-00428-CR (Tex.App. - Fort Worth 2015), the

*Vosberg* Court explained its decision regarding  *Geesa's* paragraph three:

> In *Vosberg*, we held that the trial court did not commit error in giving that
> instruction.  We did not hold, and we do not now hold that giving such an
> instruction is a wise thing for trial courts to do. But, under existing law and
> on this record, we must hold that it was not error to give the charge in this
> case.
> .....
> Nevertheless, this court has held that instructing the jury what the term
> "reasonable doubt" does not mean is not providing a definition of what the
> term does mean.

Paragraphs three and four in Appellant's Charge actually define reasonable

doubt and have been disapproved by the courts:

In *Adkins v. State,* 418 S.W.3d 856 (Tex.App. - Houston [14[th] Dist.] 2013),

the issue was only the first sentence of paragraph four which was found to be error.

Id. at 864.  This finding was based upon three reasons.  First, the *Paulson* Court

---

3 [3] It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all " reasonable doubt" concerning the defendant's guilt. [CR 88]

 [4] A " reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.  [CR 88]

singled out paragraphs four and five definitions of reasonable doubt for criticism.

*Paulson,* 28 S.W.3d at 572. Secondly, relying on *Woods v. State,* 152 S.W.3d 105

(Tex.Crim.App. 2004, en banc):

> .... In response, the Court said, " We specifically criticized paragraphs [4] and [5] of the *Geesa* instruction.... The instruction in the instant case did not contain these paragraphs. The trial court did not abuse its discretion by including paragraph [3] ... in the jury charge...." *Id.* The *Woods* Court held that submitting Paragraph [3] was not error and implied that submitting Paragraphs [1], [2], and [6] would not be error. By inference, the Court strongly suggested that submitting Paragraphs [4] and [5] in their entirety would constitute error.

The third reason was that the *Paulson* court strongly implied that it would be

error if the court submitted the *Geesa* instruction without the mutual agreement of

the defendant and the State. Furthermore, the Court stated it had found no binding

authority holding that the inclusion of paragraph four was not erroneous, and

concluded it was error for the trial court to submit the *first sentence* of Paragraph

four to the jury. Id. at 866.

After a harm analysis, the Court found the error harmless, because: (a)

there was overwhelming evidence of defendant's guilt; (b) during voir dire, the

State described " reasonable doubt" to the potential jurors as " the highest standard

we have in our legal system" and made clear that the State bears the burden of

proving guilt beyond a reasonable doubt; the trial judge also discussed reasonable

doubt, specifically stating that the term does not mean " beyond all doubt" or "

beyond a shadow of a doubt;" and (c) the remainder of the jury charge was proper

stating: " The challenged instruction in this case occupies only one sentence in a three-page jury charge." Id. at 866.

In Appellant's case, the evidence was mainly circumstantial and did not rise to being "overwhelming." Appellant was never identified as the driver.

During voir dire, the State told the panel ". . . .[Y]ou know the fancy CSI language 'beyond the shadow of a doubt,' like in a Scorsese script, or 'all doubt.' It's 'beyond a reasonable doubt,' any doubt you have that's reasonable." (6 RR 66)    In opening statement, the State said: ". . . . We often talk in jury selection why it's beyond a reasonable doubt, not beyond all doubt. That's because you would have to be a witness."  (7 RR 14)  The State never explained to the panel it was the highest standard of proof.

The trial court told the panel: "The burden of proof in this case rests  solely on the State  of Texas  throughout the trial. Never, at any time, does it shift to the defendant. The State of Texas must prove each and every element of the offense beyond a reasonable doubt."  (6 RR 41)

"Beyond a reasonable doubt" should be defined only in the minds of the jurors.  Instructing a jury that it is based on the "kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs" lessens the State's burden.  Everyone reacts differently to something "most important" in their lives.  Their verdict is not the most important thing in their lives--it is the

most important thing in the defendant's life. Although Courts have been reluctant to reverse cases where *Geesa* charges are included, they have been clear that it is the better practice not to include it and have been critical of courts that do so. Trial courts and prosecutors should ensure a fair trial by not including such inappropriate language in its jury charges. There is no more egregious harm than to allow the jury to be told how to decide the fate of an accused which constitutes a clear invasion of the province of the jury.

The "most important of your own affairs" could mean where to vacation for one juror and open heart surgery to another. This is why the Court reversed itself. "Reasonable doubt" is to be defined by the individual juror. The "vacation juror" would decide the case with a lesser standard than the "open heart" juror. Appellant's jury should have been allowed to decide his case by using its own definition of beyond a reasonable doubt. The conviction should be reversed and the case remanded to the trial court.

Issue Number Eleven

A trial court's denial of a mistrial is reviewed under an abuse of discretion standard. A momentary, inadvertent, and fortuitous encounter between a juror and a shackled defendant away from the courtroom does not necessarily call for mistrial or reversal. *Kelly v. State,* 841 S.W.2d 917 (Tex.App. - Corpus Christi 1992).

On the second day of trial, the following exchange occurred between

Appellant and the Court:

> THE DEFENDANT: I would like to make a statement that this morning, during the process of me being brought over here, I was held out front with three jurors that came by and witnessed me in the back of the police car. The last three jurors, two females and a male.
>
> . . . .
>
> THE COURT: So you think that three people saw you, what, in the back of a car or a Tahoe?
>
> . . . .
>
> THE COURT: A Tahoe or a car?
>
> . . . .
>
> THE DEFENDANT: No, sir, a car with no tint on it.
>
> THE COURT: Well, see, if I ask the jury about it, then they know that you are in custody and they know that you were brought over here in a sheriff's vehicle.
>
> THE DEFENDANT: That's why I brought it up to you without them present, sir.
>
> THE COURT: It's possible that they were not really even looking at you. It's possible, if they looked at you, they didn't realize it was you. And I think that the best thing to do is to just let it lie and, you know, we talked yesterday about ...
>
> . . . .
>
> THE DEFENDANT: I would like to make an oral motion of a mistrial based on those facts.
>
> . . . .
>
> THE COURT: Okay. The motion is denied. State ready for the jury?
>
> (8 RR 10)

Appellant properly alerted the Court to the situation, but the Court did not

allow the jurors to be questioned and advised Appellant it would be unwise.   As

stated in *Kelly*, Appellant was placed in the awkward position of having to choose either to reveal his dilemma to the jurors, which might not have seen him, or waiver error if the jurors did. Id. at 920. It was not necessary for the Court to inquire if a juror had actually seen Appellant being transported. A simple question such as "did you see the defendant this morning before trial any place other than the courtroom, and if so, did that prejudice you against the defendant?" would have sufficed. Appellant, however, was denied the opportunity to obtain this information. It is now unknown whether or not any jurors actually saw Appellant in the marked vehicle, and if so, whether or not it deprived Appellant of a fair trial as guaranteed by both the Texas and U. S. Constitutions. *U.S. Const*. amend. XIV*; Tex. Const.* art. I, sec.10. The trial court's failure to inquire as to whether the jurors had seen Appellant was error and the conviction should be reversed and the case remanded to the trial court.

PRAYER

WHEREFORE, Appellant prays that this Court: urging this Court to: (a) reverse Appellant's conviction and render an acquittal; or, in the alternative (b) remand the case to the trial court for a new trial on punishment; or, in the alternative (c) reverse Appellant's conviction and remand the case to the trial court for a new trial; or, in the alternative (d) reform the Judgment to reflect a conviction

for the misdemeanor offense of Evading Arrest and remand to the trial court for a new trial on punishment

Respectfully submitted,

/s/ Leslie Poynter Dixon
LESLIE POYNTER DIXON
Attorney at Law
P.O. Box 636
Edgewood, Texas 75117
State Bar No. 08327050
(903) 896-7649
FAX (903) 896-7686
ATTORNEY FOR APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument in this case.

/s/ Leslie Poynter Dixon
LESLIE POYNTER DIXON

## CERTIFICATE OF SERVICE

I do hereby certify that on August 3, 2015, a true copy of the Appellant's Brief will be served on the following parties by U.S. Mail or by e-service, if available.

APPELLANT:    PAUL JOSHUA CALHOUN
               TDCJ # 01985495
               Goodman Unit
               349 Private Road 8430
               Jasper, Texas 75951

ATTORNEY FOR THE STATE:
               Nancy McKinney Rumar
               Assistant District Attorney
               Henderson County, Texas

/s/ Leslie Poynter Dixon
LESLIE POYNTER DIXON

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Using Microsoft Word word count utility, I have determined that this document contains 12,076 words, not including the "caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix."

/s/ Leslie Poynter Dixon
LESLIE POYNTER DIXON