**Affirmed and Opinion filed December 17, 2013.**



In the

# Fourteenth Court of Appeals

## NO. 14-12-00956-CR

### PHILLIP BRANDON ADKINS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court at Law No. 2
Harris County, Texas
Trial Court Cause No. 1766984**

## O P I N I O N

Appellant, Phillip Brandon Adkins, was convicted of driving while intoxicated. In his first three issues, appellant challenges the admission of the blood-test evidence on constitutional and reliability grounds. Specifically, appellant argues that the trial court erred in admitting the blood-test evidence because (1) the search for his blood was unreasonable under the Fourth Amendment; (2) he was denied his right under the Sixth Amendment

Confrontation Clause to confront the nurse who drew his blood; and (3) admission of the blood-test evidence violated the third prong of the reliability test enunciated in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). In his fourth issue, appellant argues that the trial court committed reversible error when it submitted a jury instruction that included a definition of reasonable doubt. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by information with the offense of driving while intoxicated.

Appellant was driving his black Jeep Wrangler westbound on Highway 290 in Harris County, when he was stopped by Officer Ciers of the Houston Police Department at approximately 2:30 a.m. on July 2, 2011. Ciers testified that appellant was weaving outside his lane and that appellant nearly struck nearby vehicles. Appellant claimed that his erratic driving was due to a mechanical problem on his Jeep that affected his ability to steer. Ciers smelled alcohol on appellant's breath, observed that appellant's eyes were red and glassy, noticed that appellant's speech was slurred, and observed that appellant was unsteady on his feet. Appellant denied drinking when Ciers was interviewing him during the traffic stop, but appellant testified at trial that he drank three or four glasses of red wine at a bar prior to the traffic stop.

Appellant refused to participate in a battery of field sobriety tests. He also refused to provide a sample of his breath and refused to voluntarily give a sample of his blood. As a result of appellant's refusals, Ciers took appellant to the police station and obtained a search warrant to draw appellant's blood. A registered nurse drew the blood in a room reserved for blood draws. Ciers, who was present during the blood draw, testified that the room was sanitary. The nurse wiped appellant's arm with Betadine, a cleansing agent, and drew appellant's blood. A video

2

recording of the blood draw was admitted into evidence. The State's blood analyst testified that the blood test showed appellant's blood alcohol content to be .180 grams of alcohol per 100 milliliters of blood, which exceeded the maximum permitted by statute. *See* Tex. Penal Code Ann. § 49.04 (West 2011) (stating that a person commits a Class A misdemeanor if his blood alcohol concentration level is 0.15 or more while operating a motor vehicle).

The jury found appellant guilty of driving while intoxicated. He timely appealed.

## DISCUSSION

### A. The blood draw was not an unreasonable search under the Fourth Amendment.

We review de novo the question of whether a search is reasonable under the Fourth Amendment. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004); *see State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). Appellant argues that the blood draw was unreasonable under the Fourth Amendment because the nurse who drew the blood was not qualified. We disagree.

A blood draw is a search under the Fourth Amendment. *See State v. Johnston*, 336 S.W.3d 649, 658 (Tex. Crim. App. 2011). A warrant-based search is presumptively reasonable, and it is the defendant's burden to prove that a search is unreasonable. *See Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim. App. 2007). We assess the reasonableness of a warrant-based search by analyzing the totality of the circumstances. *Johnston*, 336 S.W.3d at 661.

The Court of Criminal Appeals adopted the United States Supreme Court's analysis in *Schmerber v. California*, 384 U.S. 757 (1966), to assess the reasonableness of a warrant-based search involving a blood draw. *See Johnston*,

336 S.W.3d at 658. Under this analysis, we first determine whether the police had a legal justification to conduct the search. *Id.* at 658. Here, the police had a legal justification to conduct the search because they had a valid search warrant, which appellant does not challenge.

Second, we address whether the method by which the search warrant was executed in this case was reasonable. *Id.* We note that venipuncture blood-draw tests are presumptively reasonable under the Fourth Amendment. *Id.* at 659. To make a determination on this issue, we must assess the totality of the circumstances. *Id.* at 661. We look to the qualifications of the person who drew the blood and the environment in which the blood was drawn. *See id.* at 662. A reasonable environment does not mean a medical environment; rather, the environment must be "a safe place in which to draw blood." *Id.* The proper inquiry is whether the environment invited an "unjustified risk of infection or pain." *Id.* at 662-63.

We conclude that the blood draw was performed in a reasonable manner. The person who drew appellant's blood was qualified. The blood was drawn by a registered nurse, one of the persons authorized by the warrant to draw the blood.[1] The blood was drawn in a reasonable manner. The nurse cleaned appellant's arm with Betadine before drawing the blood. The procedure was captured on video, and nothing on the video indicated that appellant suffered any pain as a result of the procedure.

The blood was drawn in a reasonable environment. Ciers, who was present at the time of the blood draw, testified that the room was sanitary. Appellant

---

[1] Appellant argues that the nurse was not qualified, but appellant did not object when Ciers testified that she was a registered nurse. Additionally, appellant repeatedly referred to the person drawing the blood as "nurse" during witness examinations.

4

presented evidence at trial that the cotton ball used to clean the injection area was placed on a table before it was used. This alone, however, is not enough evidence to prove that the environment or the procedure presented an unjustified risk of infection or pain.[2]

Based on the record, the warrant-based search was reasonable. Appellant's first issue is overruled.

**B. Under the facts of this case, the Confrontation Clause did not require the State to present the nurse who drew appellant's blood for cross-examination prior to the admission of the blood test results.**

The State presented the analyst who performed the blood analysis in its case-in-chief. At the time it offered the results of the test, appellant objected and argued that the State also had to call the nurse[3] who drew appellant's blood. Appellant argued that the nurse's testimony was essential under the third prong of *Kelly*[4] and that without that testimony first, admitting the blood test results violated his right to confrontation. The blood test results did not describe the drawing of the blood, nor did they contain any statement by the nurse.

Invoking the Supreme Court's decision in *Bullcoming v. New Mexico*, ___ U.S. ___, 131 S. Ct. 2705 (2011), appellant argues that he was entitled to confront

---

[2] The First Court of Appeals addressed a similar issue in *Gambini v. State*, a case not designated for publication. In that case, the defendant argued that "the fact that [the nurse] touched his nose, mouth, and hair, as well as [defendant's] leg and the straps on the chair, rendered the procedure unclean and exposed [defendant] to an unreasonable risk of pain and infection." No. 01-12-00395-CR, 2013 WL 4680380, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. ref'd) (mem. op., not designated for publication). The court found that the blood draw was performed properly and that the defendant produced no evidence that the nurse's actions of "touching things with his gloved hands" exposed the defendant to an unreasonable risk of pain or infection. *Id.*

[3] The court admitted a silent videotape of the nurse drawing Appellant's blood. Appellant did not object to the admission of the videotape on confrontation grounds.

[4] Discussed in section C below.

the nurse who drew his blood. Appellant essentially asks this court to extend *Bullcoming* and the Court of Criminal Appeals' recent decision in *Burch v. State*, 401 S.W.3d 634 (Tex. Crim. App. 2013), to the person who merely draws the blood—the so-called "pre-analytical" stage of the blood analysis. We respectfully decline appellant's invitation to extend these holdings to a nurse who merely draws the blood, is not involved in the actual blood analysis, and does not provide any statement that appears within or accompanies the blood test results.

The Confrontation Clause gives a criminal defendant the right to confront the witnesses against him. U.S. Const. amend. VI; *Burch*, 401 S.W.3d at 636. This means that testimonial evidence is inadmissible unless (1) the witness appears at trial and is cross-examined or (2) the witness is unavailable and the defense had an opportunity to cross-examine. *Burch*, 401 S.W.3d at 636. "[T]estimonial statements are those 'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004)). Forensic reports are testimonial statements. *Burch*, 401 S.W.3d at 636–37.

In *Bullcoming*, the prosecution's principal evidence was a forensic lab report certifying that the defendant's blood alcohol content was above the threshold for aggravated driving while intoxicated. ___ U.S. at ___, 131 S. Ct. at 2709. The prosecution called a substitute analyst to the stand rather than the analyst who certified the report. *Id.* Because the report contained testimonial evidence to prove the defendant's blood alcohol content, the Court held that the defendant had a right to confront the analyst who made the certification. *Id.* at 2710.

Similarly, in *Burch*, the prosecution submitted a lab report certifying that four green Ziploc bags contained cocaine. *Burch*, 401 S.W.3d at 635. The state called the person who reviewed the report instead of the analyst who certified the

report. *Id.* Because the reviewer lacked personal knowledge about whether the tests were done correctly or whether the analyst fabricated the results, the Court of Criminal Appeals held that the surrogate testimony did not satisfy the mandates of the Confrontation Clause. *Id.* at 637.

*Bullcoming* and *Burch* stand for two propositions. First, a forensic report that asserts a fact (e.g., about blood alcohol content or about the contents of a plastic bag) is testimonial. Second, in order to satisfy the Confrontation Clause, the analyst who tested the substance must be subjected to cross-examination or, if the analyst is unavailable, the defense must have had the opportunity to cross-examine him. In this case, the prosecution presented a report certifying that appellant's blood alcohol content was above the legal limit. The analyst who tested appellant's blood and signed the report testified at trial and was subjected to cross-examination. This is all the Confrontation Clause requires.

Perhaps anticipating this argued expansion of the Confrontation Clause, the Supreme Court in *Melendez-Diaz v. Massachusetts* noted that the Confrontation Clause does not require "that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." 557 U.S. 305, 311 n.1 (2009). In a similar case, the San Antonio Court of Appeals held that the Confrontation Clause did not require the testimony of the nurse who drew blood before the necessary chain of custody was established for a blood sample when a police officer who was present at the blood draw testified. *Mitchell v State*, No. 04-12-00870-CR, 2013 WL 6244137, at *4 (Tex. App.—San Antonio Dec. 4, 2013, no pet. h.). While this case is slightly different because appellant argues that the nurse's testimony was necessary to establish the quality of the blood sample (and not custody), as discussed below, the analyst was able to discern the quality of

7

the blood sample without any reliance on any statement by the nurse or even by review of the videotape of the nurse's blood draw. Under these facts, we hold that appellant's confrontation rights have not been violated. Appellant's second issue is overruled.

**C.     The trial court did not abuse its discretion when it admitted appellant's blood test result into evidence.**

We review challenges to the admission of evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

Appellant argues that the trial court abused its discretion by admitting evidence that was acquired in violation of the third prong of the *Kelly* reliability test—that is, that the technique employed to draw the blood was not properly applied. *See Kelly*, 824 S.W.2d at 573. Because we find sufficient evidence in the record to support the admission of the blood draw evidence, we overrule appellant's third issue.

The *Kelly* court established a test for determining the admissibility of novel scientific evidence. *Id.* The *Kelly* reliability test now applies to all scientific evidence. *Hartman v. State*, 946 S.W.2d 60, 63 (Tex. Crim. App. 1997). Under this test, "evidence derived from a scientific theory, to be considered reliable, must satisfy three criteria in any particular case: (a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." *Kelly*, 824 S.W.2d at 573.

The State offered into evidence test results for blood drawn from appellant. The State's expert, William Arnold, testified as to the analysis of the blood sample in this case. Arnold did not view the video of the blood draw. Arnold testified that certain procedures should be followed to properly preserve blood samples and

8

noted that vials containing blood samples should be properly inverted and not shaken. Arnold stated that if proper procedures were not followed, the blood sample would likely contain clots. Arnold testified that there were no clots present in the blood sample in this case. Arnold further testified that no analytical exceptions to the standard operating procedures were noted in the instant case. Arnold's testimony supports the third prong of *Kelly*, that the technique was "properly applied on the occasion in question." *Id.* at 573. The admission was proper "in light of what was before the trial court at the time the ruling was made." *Weatherred*, 15 S.W.3d at 542. The trial court did not abuse its discretion when it admitted the blood test results. We overrule appellant's third issue.

**D.** **The trial court erred when it submitted the first sentence of Paragraph [4] of the *Geesa v. State* jury instruction, but the error was harmless.**

In *Geesa v. State*, the Court of Criminal Appeals mandated that the following six-paragraph jury instruction be submitted to the jury in all criminal cases:

> [1] All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a defendant to prove his innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.
>
> [2] The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.
>
> [3] It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all

"reasonable doubt" concerning the defendant's guilt.

[4] A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

[5] Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

[6] In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you and these instructions, you will acquit him and say by your verdict "Not guilty."

820 S.W.2d 154, 162 (Tex. Crim. App. 1991); *see Woods v. State*, 152 S.W.3d 105, 114–15 (Tex. Crim. App. 2004) (numbering the *Geesa* instruction paragraphs). The instruction at issue in this case is the first sentence of Paragraph [4]. The Court of Criminal Appeals overruled *Geesa* to the extent that it required all trial courts in criminal cases to give the instruction on reasonable doubt. *Woods*, 152 S.W.3d at 115; *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

Appellant argues that the trial court committed reversible error and violated the holding of *Paulson* when it included the Paragraph [4] definition of reasonable doubt in the jury instruction. We disagree and conclude that while it was error to include Paragraph [4] in the jury instruction, the error was harmless.

We review improper jury charges under the *Almanza* harmless error standard. *See Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985). In a jury-charge issue, we must first decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "Then, if we find error, we analyze that error for harm." *Id.* Preservation of error becomes an issue during the harm analysis. *Id.* A jury-charge error that has been properly preserved must be reversed unless the error is harmless. *Almanza*, 686 S.W.2d at 171. A jury-charge error that has not been properly preserved will be reversed only if the error was so serious

10

that the defendant did not have a "fair and impartial trial." *Id.* In other words, if a defendant has preserved his objection, we must reverse if the defendant suffered "some harm" to his rights, and if the defendant has not preserved his objection, we must reverse only if the defendant suffered "egregious harm." *Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171. "[W]e review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal." *Ngo*, 175 S.W.3d at 744.

### 1. The trial court erred when it submitted a portion of the Paragraph [4] jury instruction.

We believe that submitting the portion of the Paragraph [4] instruction was error for three reasons. First, the *Paulson* Court singled out the Paragraph [4] and [5] definitions of reasonable doubt for criticism. *Paulson*, 28 S.W.3d at 572. In *Paulson*, the Court divided the *Geesa* instruction into two main parts. It referred to the first part, which encompassed Paragraphs [1], [2], [3], and [6], as the "essence of redundancy" but said that "if repetition were [the] only flaw, perhaps we could continue to follow it." *Id.* Thus, Paragraphs [1], [2], [3], and [6] did not constitute a potentially harmful instruction that needed substantive review. The Court took issue with the *Geesa* instruction's clumsy attempt to define reasonable doubt in the second part of the instruction, which encompassed Paragraphs [4] and [5]. *Id.* The Court characterized the first sentence of Paragraph [4] as a "useless" definition, described the second sentence of Paragraph [4] and all of Paragraph [5] as "more troubling because the use of 'hesitation' is ambiguous," and further derided Paragraph [5] as a "fallacious application" of the second sentence of Paragraph [4]. *Id.* While the Court's criticism of Paragraphs [4] and [5] varies in degree from "useless" to "fallacious," it is reasonable to conclude that including any part of

11

those paragraphs in a jury instruction would constitute error.

The second reason we believe that the trial court erred when it submitted Paragraph [4] is related to the first reason. In *Woods*, the defendant argued that submitting parts of the *Geesa* instruction was error. *Woods*, 152 S.W.3d at 114. Specifically, the trial court submitted Paragraphs [1], [2], [3], and [6], and the defendant only challenged the inclusion of Paragraph [3]. *Id.* at 115. In response, the Court said, "We specifically criticized paragraphs [4] and [5] of the Geesa instruction . . . . The instruction in the instant case did not contain these paragraphs. The trial court did not abuse its discretion by including paragraph [3] . . . in the jury charge . . . ." *Id.* The *Woods* Court held that submitting Paragraph [3] was not error and implied that submitting Paragraphs [1], [2], and [6] would not be error. By inference, the Court strongly suggested that submitting Paragraphs [4] and [5] in their entirety would constitute error.

The third reason we believe that the trial court erred when it submitted a portion of Paragraph [4] is that the *Paulson* court strongly implied that it would be error if the court submitted the *Geesa* instruction without the mutual agreement of the defendant and the State. *See Paulson*, 28 S.W.3d at 573. In *Paulson*, the trial court did not give the mandated *Geesa* instruction. *Id.* at 570-71. The defendant argued that this failure required reversal. *Id.* at 571. After criticizing the *Geesa* instruction, the *Paulson* court overruled *Geesa* and ultimately concluded that the "better practice is to give no definition of reasonable doubt at all to the jury." *Id.* at 573. But the Court also said, "[I]f both the State and the defense agree to give the *Geesa* instruction to the jury, it would not constitute reversible error for the trial court to acquiesce to their agreement." *Id.* The necessary corollary to the Court's second statement is that if the State and the defense do not agree to give the entire *Geesa* instruction to the jury, it would constitute error for the trial court to give the

12

instruction. Here, the State and appellant did not agree to give the portion of the Paragraph [4] instruction. In fact, appellant objected to the instruction, and the trial court submitted the instruction despite the objection.

The State asserts that the circuits are split about whether giving the *Geesa* instruction is error. The cases the State cites, however, predate *Woods* and are distinguishable,[5] unclear about which paragraph of the instruction was at issue,[6] or simply conclude, without analysis, that no error occurred.[7] Furthermore, we have not found any binding authority holding that the inclusion of Paragraph [4] is not erroneous.

Because the Court of Criminal appeals has (1) singled out Paragraphs [4] and [5] of the *Geesa* instruction for criticism, (2) suggested that including Paragraphs [1], [2], [3], and [6] of the *Geesa* instruction would not be error, and (3) implied that including the *Geesa* instruction is error unless the State and the defense agree to its inclusion, we conclude that it was error for the trial court to submit the first sentence of Paragraph [4] to the jury.

---

[5] Several of the cases cited by the State are distinguishable because only the Paragraph [3] instruction was at issue. *Compare Carriere v. State*, 84 S.W.3d 753, 759 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding that submitting Paragraph [3] is not error) *and Vosberg v. State*, 80 S.W.3d 320, 323–24 (Tex. App.—Fort Worth 2002, pet. ref'd) (same) *with Rodriguez v. State*, 96 S.W.3d 398, 405 (Tex. App.—Austin 2002, pet. ref'd) (holding that submitting Paragraph [3] is error) *and Phillips v. State*, 72 S.W.3d 719, 721 (Tex. App.—Waco 2002, no pet.) (same).

[6] *See Dooley v. State*, 65 S.W.3d 840, 843–44 (Tex. App.—Dallas 2002, pet. ref'd) (referring generally to the "reasonable doubt instruction"); *see also Minor v. State*, 91 S.W.3d 824, 827–28 (Tex. App.—Fort Worth 2002, pet. ref'd) (Paragraph [3] case; court cites *Dooley* when asking "whether use of this [Paragraph [3]] language in the charge is error").

[7] *See Brown v. State*, 91 S.W.3d 353, 358 (Tex. App.—Eastland 2002, no pet.) ("Although *Paulson . . .* discourages trial courts from [defining reasonable doubt], we find that it was not error to include the definition [from Paragraphs [4] and [5]] in this case.").

## 2. The submission of Paragraph [4] of the "Geesa Instruction" was harmless error.

Appellant objected to the jury instruction and preserved error. Therefore, we must determine whether giving the portion of the *Geesa* instruction caused appellant "some harm." *Ngo*, 175 S.W.3d at 743–44; *Almanza*, 686 S.W.2d at 171. To assess the degree of harm, we look to the jury charge, the state of the evidence, counsels' arguments, and any other relevant information revealed by the entire record. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); *Almanza*, 686 S.W.2d at 171. The record must show that appellant suffered "actual" harm, not merely "theoretical" harm. *Almanza*, 686 S.W.2d at 174. We conclude that submitting Paragraph [4] did not cause appellant harm.

In this case, the State's evidence was overwhelming. Appellant's blood alcohol content exceeded the legal limit. The arresting officer testified that appellant was driving erratically, that appellant smelled of alcohol, that appellant's eyes were red, that appellant's speech was slurred, and that appellant was unsteady on his feet. Appellant admitted to ingesting three or four glasses of red wine. On the other hand, the only evidence presented by appellant was that his expert, who had never drawn blood, doubted whether the blood draw was accomplished according to standard operating procedures, that his car had steering problems, that he had suffered injuries that affected his ability to participate in the field sobriety tests, and that he had only ingested three or four glasses of red wine.

Additionally, during voir dire, the State described "reasonable doubt" to the potential jurors as "the highest standard we have in our legal system" and made clear that the State bears the burden of proving guilt beyond a reasonable doubt. The trial judge also discussed reasonable doubt, specifically stating that the term does not mean "beyond all doubt" or "beyond a shadow of a doubt." The trial

14

judge also explained that the State bears the burden of proof.

Lastly, the jury charge, construed as a whole, did not cause appellant harm. Generally, we analyze a jury charge in its entirety and do not judge a single instruction in isolation. *See Mann v. State*, 964 S.W.2d 639, 642 (Tex. Crim. App. 1998); *Crum v. State*, 946 S.W.2d 349, 362 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). The challenged instruction in this case occupies only one sentence in a three-page jury charge. Although the Court of Criminal Appeals did criticize Paragraph [4] of the *Geesa* instruction, the criticism merely pointed out that the first sentence of Paragraph [4] was "useless" because it was a circular definition. *Paulson*, 28 S.W.3d at 572 ("[The first sentence of Paragraph [4]] is useless. It is like saying 'A white horse is a horse that is white.'"). In contrast, the Court harshly criticized Paragraph [5] because it suggested that a juror's hesitation equated to reasonable doubt. *Id.* ("The court says that reasonable doubt makes you hesitate to act; therefore, if you hesitate to act, you have a reasonable doubt. . . . This is the logical fallacy called 'affirming the consequent.'"). The lesser degree of criticism suggests that submitting only the first sentence of Paragraph [4] to a jury may be useless but would not harm a defendant.

The remainder of the jury charge was proper in this case. It identifies appellant and his plea; it states the applicable law and defines legal terms; it properly explains that appellant is presumed innocent; and it makes clear that the State must prove each element of the offense beyond a reasonable doubt.

After examining the entire record, we conclude that the jury-charge error in this case did not harm appellant. *See, e.g.*, *Rodriguez*, 96 S.W.3d at 406 (examining evidence in the record, voir dire examination of the jury panel, and the jury charge). Accordingly, we overrule appellant's fourth issue.

15

**CONCLUSION**

We affirm the judgment of the trial court.

/s/         Marc W. Brown
                  Justice

Panel consists of Justices Christopher, Donovan, and Brown.

Publish — TEX. R. APP. P. 47.2(b).

16