**Affirmed and Memorandum Opinion filed April 27, 2021.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-19-00343-CR

_____

**JANA FAMBUENA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court at Law No. 10
Harris County, Texas
Trial Court Cause No. 2185570**

## MEMORANDUM OPINION

Appellant Jana Fambuena challenges her conviction by a jury of the misdemeanor offense of driving while intoxicated. Appellant raises two issues on appeal. We affirm the judgment of the trial court.

### I.    BACKGROUND

On January 13, 2018, State Trooper Ryan Pace arrested appellant for suspicion of driving while intoxicated ("DWI"). Appellant refused to give a

sample of her breath or her blood for analysis. Trooper Pace made application for a search warrant to obtain a sample of appellant's blood.

Trooper Pace transported appellant to Cy-Fair Medical Center where they waited in the emergency room ("ER") lobby for an executed warrant to arrive. Upon receiving the authorization for the blood draw, Trooper Pace showed appellant the executed warrant and requested appellant move to a private area for the procedure. Appellant refused to cooperate. Trooper Pace testified that appellant began screaming obscenities. Hospital staff attempted to assist her to a room, but appellant resisted efforts to move from the ER lobby by lying on her back on the floor and kicking. A hospital registered nurse, Chris Weyland, suggested conducting the blood draw in the ER lobby. Trooper Pace held appellant's legs, and Trooper Kevin Fitzgerald[1] secured her upper body and shoulders, even as appellant tried to bite him. Nurse Weyland proceeded to draw the samples of blood from appellant.

A subsequent analyses of appellant's blood showed a blood-alcohol concentration ("BAC") of 0.145 grams of alcohol per 100 milliliters of blood, which was over the legal limit of 0.08 grams per of alcohol per 100 milliliters of blood.[2]

Appellant was charged with the misdemeanor offense of DWI. Appellant moved to suppress the results of the blood test, contending the manner in which the blood draw occurred constituted an assault, rendering the seizure of her blood

---

[1] Trooper Fitzgerald was in the ER on an unrelated matter when Trooper Pace requested his assistance.

[2] "The per se definition of intoxicated is 'having an alcohol concentration of 0.08 or more.'" *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012) (quoting Tex. Penal Code § 49.01(2)(B)).

unreasonable. After conducting a suppression hearing and receiving testimony from witnesses, the trial court denied the motion.

Trial commenced on March 11, 2019. The State presented testimony from Trooper Pace, Trooper Fitzgerald, and Nurse Weyland about the blood draw and testimony from forensic scientist, Yen Ju Ho, about the analyses of appellant's blood. For the defense, appellant testified on her own behalf.

After the defense rested, appellant's trial counsel requested a 38.23(a)[3] instruction be included in the jury charge. She argued that several factual issues had been raised, including whether appellant was handcuffed, the level and degree of force used by the troopers, and whether the force used by the troopers was reasonable. She argued that these factual issues should be submitted to the jury to determine whether there was a violation of 38.23 and the fruits of the illegal search should be suppressed. The State responded that the reasonableness of the force used is a legal issue for the trial court to determine unless there has been a material factual disputed raised by the evidence, which the State argued had not been established. The trial court denied appellant's request for a 38.23(a) instruction. The trial court indicated that these factual conflicts did not rise to the level of "material facts" involving the legality of the blood draw.

---

[3] Article 38.23(a) of the Texas Code of Criminal Procedure, "Evidence not to be used," provides:

> (a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. art. 38.23(a).

On March 12, 2019, the jury found appellant guilty of DWI, and assessed her punishment at 180 days in the county jail. The trial court suspended her sentence and placed appellant on an 18-month probation. This appeal timely followed.

## II. ANALYSIS

Appellant raises two issues on appeal. In her first issue, appellant asserts there was jury charge error, contending that she was entitled to an article 38.23(a) jury instruction concerning the legality of her blood draw. Appellant maintains that her blood draw was not performed in a reasonable manner as required by the Fourth Amendment. In her second issue, appellant argues the Harris County District Attorney's Office lacks legal authority to represent the State of Texas in this appeal from a county court-at-law. Appellant contends that we should not "recognize" any brief filed by the Harris County District Attorney on behalf of the State of Texas.

### A. CHARGE ERROR

#### 1. STANDARD OF REVIEW

When reviewing a claim that the trial court failed to properly charge the jury, we first determine whether error occurred; if error did not occur, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *see Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). When there is a disputed fact issue that is material to the defendant's claim of a constitutional or statutory violation that would render evidence inadmissible, an exclusionary-rule instruction is required by article 38.23(a). *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007). If we conclude there was error, there are separate standards of

review for determining whether the defendant was harmed by the error. *Rogers v. State*, 550 S.W.3d 190, 191 (Tex. Crim. App. 2018).

### 2.  TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.23

Texas' statutory exclusionary rule, codified at article 38.23(a) of the Texas Code of Criminal Procedure, prevents the use of any evidence against the accused that was obtained in violation of federal or state constitutions or laws. Tex. Code Crim. Proc. art. 38.23(a). "To be entitled to an Article 38.23 jury instruction, three predicates must be met: (1) the evidence heard by the jury must raise an issue of fact, (2) the evidence on that fact must be affirmatively contested, and (3) the contested factual issue must be material to the lawfulness of the challenged conduct." *Hamal v. State*, 390 S.W.3d 302, 307 (Tex. Crim. App. 2012).

In short, there must be a genuine dispute about a material fact. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007). To be material, the disputed fact issue must be an essential one in deciding the lawfulness of the challenged conduct. *Id*. at 511. Evidence that would justify an article 38.23(a) instruction may be derived "from any source," no matter whether "strong, weak, contradicted, unimpeached, or unbelievable*." Robinson*, 377 S.W.3d at 719. If there is no disputed factual issue, the legality of the conduct is determined by the trial judge alone, as a question of law. *Madden*, 242 S.W.3d at 510. And if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. *Id.*

It is an exception to the requirement of 38.23(a) if "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probably cause." Tex. Code Crim. Proc. art. 38.23(b). Although the State argues that appellant's issue is

foreclosed under 38.23(b), we are not persuaded that this overrides the application of a Fourth Amendment totality of the circumstances reasonableness analysis to the facts surrounding appellant's blood draw.  *See Johnston*, 336 S.W.3d at 661.

### 3.    FOURTH AMENDMENT

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. Const. amend. IV; *see also* Tex. Const. art I, section 9.  A compulsory blood draw conducted at the direction of a law enforcement officer constitutes a search and seizure under the Fourth Amendment.  *Schmerber v. California*, 384 U.S. 757, 767–68 (1966); *State v. Johnston*, 336 S.W.3d 649, 657–58 (Tex. Crim. App. 2011).

The Texas Court of Criminal Appeals adopted the U.S. Supreme Court's two-part test set forth in *Schmerber* to assess the reasonableness of a warrant-based search involving a blood draw.[4]  *Johnston*, 336 S.W.3d at 658 (citing *Schmerber*, 384 U.S. at 768).  Under this analysis, we first determine whether the police had a legal justification to conduct the search.  *Id*.  Next, we address the second-prong, whether the method by which the search warrant was executed in this case was reasonable.  *Id*.  The Texas Court of Criminal Appeals has stated that "means and procedures" under the second prong contains two discrete inquiries: 1) whether the test chosen was reasonable or, in other words, whether the "means" employed were reasonable; and (2) whether the test was performed in a reasonable manner or, in other words, whether the "procedures" employed were reasonable.  *Id*.

"Based on *Schmerber* and *Johnston*, then, a defendant seeking suppression of a blood draw as an unreasonable search and seizure in violation of the Fourth

---

[4]    In *Schmerber*, the United States Supreme Court set forth a two-part analysis for determining the legality of a blood draw: (1) whether the law enforcement officer was justified in requiring the defendant to submit to a blood test and (2) whether the law enforcement officer employed reasonable means and procedures in taking the defendant's blood.  384 U.S. at 768.

6

Amendment must prove that (1) a law enforcement officer was not justified in requiring the defendant to submit to a blood test,[5] (2) drawing the defendant's blood was an unreasonable method to determine the defendant's intoxication level,[6] or (3) the procedure used for the blood draw was unreasonable." *Sweat v. State*, 612 S.W.3d 390, 397 (Tex. App.—Houston [1st Dist.] 2020, no pet. h.) (citing *Schmerber*, 384 U.S. at 768; *Johnston*, 336 S.W.3d at 658). "[A] defendant who alleges a Fourth Amendment violation—not the State—has the burden of producing evidence that rebuts the presumption of proper conduct by law enforcement officers." *Id*. (citing *State v. Robinson*, 334 S.W.3d 776, 778–79 (Tex. Crim. App. 2011)).

"Whether a blood draw is conducted pursuant to a warrant or not, the assessment of reasonableness is purely a matter of Fourth Amendment law." *Johnston*, 336 S.W.3d at 661. "[T]he reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw." *Id*. The determination of objective reasonableness is a question of law reserved for the trial court, not the jury. *See Madden*, 242 S.W.3d at 511 (issue of "reasonable suspicion" under the Fourth Amendment was not appropriate topic for a requested instruction under Article 38.23(a)); *see also Siddiq v. State*, 502 S.W.3d 387, 403–04 (Tex. App.—Fort Worth 2016, no pet.) (reasonableness of blood draw under the

---

[5] Appellant does not challenge Trooper Pace's legal justification to conduct the blood draw pursuant to a search warrant. *See Adkins v. State*, 418 S.W.3d 856, 860 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) ("[a] warrant-based search is presumptively reasonable, and it is the defendant's burden to prove that a search is unreasonable.").

[6] Appellant does not dispute the reasonableness of the test chosen, and we note that venipuncture blood-draw tests are presumptively reasonable under the Fourth Amendment. *Johnston*, 336 S.W.3d at 859.

circumstances was not an appropriate topic for a requested instruction under article 38.23(a)).

### 4. THE BLOOD DRAW WAS NOT AN UNREASONABLE SEARCH UNDER THE FOURTH AMENDMENT

Appellant challenges the location of the blood draw, the restraint employed during the blood draw, and the alleged pain during the blood draw. These challenges implicate the third prong — the procedure used for the blood draw was unreasonable. *See Sweat*, 612 S.W.3d at 397 (citing *Schmerber*, 384 U.S. at 768; *Johnston*, 336 S.W.3d at 658). Appellant argues that the reasonableness of the circumstances surrounding her blood draw should have been decided by the jury. She contends conflicts in the testimony about whether she was handcuffed at the time blood was taken and whether she was in pain,[7] constitute factual disputes, material to the question of whether the blood draw involved excessive use of force in violation of her rights under the Fourth Amendment.

### a. Determination of Fourth Amendment Reasonableness is a Question of Law

As a threshold matter, appellant's 38.23(a) jury instruction was not a request for the jury to decide a disputed issue of historical fact. Rather, appellant wanted the jury to decide a question of law —the reasonableness of the circumstances surrounding her blood draw and whether excessive force was used — which was not an appropriate issue for a requested instruction under Article 38.23(a). In her Reply Brief, appellant concedes that "[t]he question of whether the level of force used by the troopers was reasonable is a legal question for the trial judge. It is not a factual determination for the jury to make."

---

[7] During the charge conference, appellant's trial counsel argued three alleged factual disputes. Although defense counsel did not specifically refence appellant's pain as rising to the level of a factual dispute, she did raise "the level and degree of force" and whether the force used was reasonable.

As the Texas Court of Criminal Appeals explained in a different context (whether an officer had a reasonable suspicion to detain the defendant) as to when a jury instruction is wholly inappropriate regarding issues of reasonableness implicating the Fourth Amendment:

> The jury, however, is not an expert on legal terms of art or the vagaries of the Fourth Amendment. It cannot be expected to decide whether the totality of certain facts do or do not constitute "reasonable suspicion" under the law. That would require a lengthy course on Fourth Amendment law. Even many experienced lawyers and judges disagree on what constitutes "reasonable suspicion" or "probable cause" in a given situation. It is the trial judge who decides what quality and quantum of facts are necessary to establish "reasonable suspicion." Only if one or more of those necessary facts are disputed does the judge ask the jury to decide whether the officer's belief in those facts was reasonable.

*Madden*, 242 S.W.3d at 512. Whether the blood draw was reasonable under the Fourth Amendment was a question of law for the trial court to decide, not a question for fact for the jury. *See Siddiq*, 502 S.W.3d at 405. As such, the trial court did not err by refusing to include a 38.23(a) instruction about the blood draw in the jury charge. *See Robinson*, 377 S.W.3d at 719.

### b. "MEANS AND PROCEDURES" OF BLOOD DRAW REASONABLE

The nurse who drew appellant's blood–Nurse Weyland– testified that she is a registered nurse with twenty-eight years' experience and holds numerous certifications. Appellant did not produce any evidence that Nurse Weyland was unqualified to draw her blood. *See Johnston*, 336 S.W.3d at 662. As for the environment or location of the blood draw, admittedly the ER lobby floor is not an ideal place to draw blood, however, both Trooper Pace and Nurse Weyland testified that the floor where the blood draw occurred was clean and that Nurse Weyland sanitized appellant's arm with a Betadine swab before drawing the

9

blood. Additionally, Trooper Pace testified that the area of appellant's arm where the blood was drawn did not touch the floor. Although appellant contends her arm was not cleaned prior to the blood draw, there was no evidence that Nurse Weyland did not follow standard procedures for blood draws.

Further, there is no evidence that Nurse Weyland's actions, in conducting the blood draw while appellant was on her back on the floor, was inherently unreasonable. *See Johnston*, 336 S.W.3d at 662 n.54 (noting persuasive authority upholding blood draws taken within the confines of various law enforcement agencies); *see also State v. Fikes*, 585 S.W.3d 636, 642 (Tex. App.—Austin 2019, no pet.) (concluding that nurse's use of biohazard waste bin as workstation for staging supplies and nurse running her hands through her hair and putting on sweater while wearing gloves did not demonstrate that blood draw subjected appellant to unjustified risk of infection); *Zalman v. State*, No. 13-13-00471-CR, 2015 WL 512914, at *9 (Tex. App.—Corpus Christi–Edinburg Feb. 5, 2015, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant had not shown that blood draw was unreasonable despite presence of insects in room during blood draw because appellant had not shown that insects contaminated EMT's equipment or touched injection site during or after blood draw); *Adkins*, 418 S.W.3d at 861 (concluding that evidence that cotton ball used to clean injection area had been placed on table before it was used was "not enough evidence to prove that the environment or the procedure presented an unjustified risk of infection or pain."); *Gambini v. State*, No. 01-12-00395-CR, 2013 WL 4680380, at *5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, pet. ref'd) (mem. op., not designated for publication) (rejecting appellant's argument that procedures used to take blood were unreasonable even though nurse who drew her blood "touched his nose, mouth, and hair, as well as [appellant's] leg and the

10

straps on the chair" with his gloved hands); *Martin v. State*, No. 10-10-00426-CR, 2012 WL 3242666, at *4 (Tex. App.—Waco Aug. 9, 2012, pet. ref'd) (mem. op., not designated for publication) (upholding a blood draw in jail where nurse testified that the room where the blood draw took place was "relatively sanitary" and nurse testified that she used a sterile procedure following accepted medical practice).

The hospital ER lobby, according to the evidence, was a safe environment; Trooper Pace testified that, on the floor, appellant was not at risk of hitting her head, or any obstacle or instrument next to her. Here, there is not enough evidence to show that the environment or the procedure presented "'an unjustified element of personal risk of infection or pain.'" *Johnston*, 336 S.W.3d at 662–63 (quoting *Schmerber*, 384 U.S. at 772). Thus, we conclude that while sitting in a chair in a private room in the ER may have been ideal, it does not mean that, under the totality of the circumstances in this case, conducting the blood draw on the floor of the ER lobby was unreasonable under the Fourth Amendment.

Appellant also argues that "the troopers acted unreasonably in holding her down on the hospital floor to extract a blood sample." She also disputes Trooper Pace's testimony that he unhandcuffed appellant for the blood draw. To the extent appellant takes issue with the level and degree of force used, it is undisputed that appellant refused to cooperate with the blood draw. After being shown the warrant appellant became belligerent in the ER lobby and refused to move to a private area for the procedure. Trooper Pace testified that appellant was held down lightly for a brief amount of time until the blood sample was extracted. Appellant did not testify that the troopers used more force than was necessary. Appellant testified that the troopers held her very tightly and that she felt pain when the nurse stuck her repeatedly with the needle. She testified she screamed,

11

"you're hurting me." She also testified she was crying and begged "Don't do this to me, please. I mean, I don't need this right now because I was going through, I mean a nightmare in my other personal life."

The mere fact that appellant was held down to allow for the blood draw to be conducted does not mean that the procedure presented an unjustified risk of infection or pain. The Texas Court of Criminal appeals has observed that the reasonable use of physical force and restraint to obtain a blood sample is permissible. *Johnston*, 336 S.W.3d at 663 & n.58 (noting cases in which various restraints utilized and found to be reasonable considering the totality of the circumstances). The mere use of force, without a finding of unreasonableness, does not support the conclusion that the draw was performed in an unreasonable manner. *See id*. at 663–64.

Appellant asserts her case is distinguishable because she felt pain during the blood draw. The reasonableness of Trooper Pace's use of force to conduct the blood draw does not turn upon whether appellant told them she was feeling pain during the blood draw. Appellant fails to cite any authority for this proposition that her pain alone is sufficient to transform an otherwise valid search into an unconstitutional one. Appellant admitted at trial that she "refused all the way" even after she was told there was a search warrant authorizing the blood draw. Appellant testified that she was not going to let the police take her blood at any cost. Even if appellant's testimony was believed that she was experiencing pain, this would not mean the officer's use of force was unreasonable. In sum, appellant has not shown that the "means and procedures" of her blood draw included an "unjustified element of personal risk or infection or pain." *Schmerber*, 384 U.S. at 771–72.

12

Based on the totality of the circumstances, we conclude that appellant has not shown that her blood draw was unreasonable in violation of her Fourth Amendment rights. *See Johnston*, 336 S.W.3d at 662. The trial court did not err by refusing to include an article 38.23 instruction in the jury charge.

We overrule appellant's first issue.

## B. APPELLANT'S REPRESENTATION ON APPEAL

In her second issue, appellant argues the Harris County District Attorney's Office lacks legal authority to represent the State of Texas in this appeal from a county court-at-law verdict. Appellant contends that we should not "recognize" any brief filed by the Harris County District Attorney on behalf of the State of Texas.

As an initial matter, because the State prevailed at trial, it was not required to respond to any matters raised by appellant in our court. *See Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007). While the Texas Rules of Appellate Procedure require an appellant to file a brief, there is no requirement that the appellee file a brief. *See* Tex. R. App. P. 38.8; *see also Volosen*, 227 S.W.3d at 80.

In this case, appellant's second issue fails to challenge any aspect of the merits of the trial court's judgment; instead, appellant asserts a matter of appellate procedure. Because the State prevailed in the trial court and is not required to file an appellee's brief, we do not address the merits of appellant's second issue because it is not necessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1, 47.4.

We overrule appellant's second issue.

## III. CONCLUSION

Having overruled each of appellant's issues, we affirm the trial court's judgment.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Zimmerer, Poissant, and Wilson.

Do Not Publish. Tex. R. App. P. 47.2.