**Affirmed and Opinion Filed May 16, 2022**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00631-CR

**BABLOO JOHN WILLIAMS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Criminal Court No. 9**
**Dallas County, Texas**
**Trial Court Cause No. MB17-63534**

## MEMORANDUM OPINION

Before Justices Osborne, Pedersen, III, and Reichek
Opinion by Justice Pedersen, III

A jury found appellant Babloo John Williams guilty of driving while intoxicated. The trial court assessed his punishment at 120 days' confinement and a fine of $500. Appellant's confinement was suspended, and he was instead placed on community supervision for twelve months. In three issues, appellant challenges (1) the admission of a photographic exhibit depicting vials of drawn blood labelled with his name and date of birth, (2) the reasonableness of his blood draw under the Fourth Amendment, and (3) the admission of the blood draw under standards of scientific evidence. We affirm the trial court's judgment.

**Background**

Appellant was arrested by Officer Dionicio Buitron for driving while intoxicated. Buitron transported appellant to the Lew Sterritt Justice Center and asked appellant for consent to draw a blood specimen. Appellant refused, so Buitron applied for and received a warrant to obtain the specimen. Buitron witnessed Jerry Rico, a medical assistant at the jail, draw appellant's blood pursuant to the warrant. The blood was analyzed at the Southwestern Institute of Forensic Sciences (SWIFS).

At trial, Buitron testified concerning the blood draw, and a video of the draw was admitted and shown to jurors. Rico did not testify. Terry Robinson, a forensic toxicologist and technical supervisor at SWIFS, testified in detail concerning the testing that he performed on appellant's blood sample. Robinson reported that appellant's blood alcohol content was .137, well above the legal limit in Texas, which is 0.08.

The jury found appellant guilt of driving while intoxicated. The trial court assessed his punishment at 120 days' confinement, suspended in favor of twelve months of community supervision, and a fine of $500. This appeal followed.

**Challenges to Appellant's Blood Draw**

Each of appellant's three issues addresses evidence related to the drawing of his blood. We address them in turn.

*Hearsay on the Vials of Blood*

In his first issue, appellant challenges the trial court's admission of the State's exhibit 5. The exhibit is a photograph of the vials of appellant's blood drawn after his arrest. The vials are labeled with appellant's name and date of birth as well as the date and time the blood was drawn. Appellant objected that the writing on the vials was inadmissible hearsay. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). A writing that is offered for the purpose of showing *what* was said—rather than for proving the truth of the matter that was stated—does not constitute hearsay. *Delapaz v. State*, 228 S.W.3d 183, 206 (Tex. App.—Dallas 2007, pet. ref'd) (citing *Dinkins v. State,* 894 S.W.2d 330, 347 (Tex. Crim. App. 1995)).

We agree that Rico made an out of court statement by writing appellant's name and date of birth on the labels. The question raised by the first issue is whether the photograph of the label was offered by the State for the truth of the matter asserted or for another reason. The State argued that the photograph was not being offered for the truth of any matter written on the exhibit. Instead, it was offered to establish a portion of the chain of custody of the blood vials. Buitron testified that he watched Rico write on the labels and affix the labels to the vials before handing

them to him in an evidence bag. Buitron testified that he recognized the tubes in the photograph as the ones handed to him by Rico that night based on the writing on the labels. The trial court agreed that the photo was offered to prove how the officer recognized the vials as the same ones he took from Rico, not for the truth of any writing upon them.

We are likewise persuaded that the relevance of the exhibit hinged in this instance on the witness's recognizing the writing as the same writing he had seen on the evidence that night at Lew Sterritt. A police officer serving as a witness in a criminal trial must routinely establish his part in the chain of custody of evidence presented at trial. When the officer testifying discovered the evidence, he will identify it at trial by the markings he put on the evidence himself. When the witness is identifying evidence he received from another participant in the chain of custody he must be able to authenticate the evidence by the markings placed on the evidence by the person from whom he received it. *See, e.g., Gamiz v. State*, No. 05-19-00434-CR, 2020 WL 2182725, at \*1–2 (Tex. App.—Dallas May 6, 2020, no pet.) (mem. op., not designated for publication) (when officer personally witnessed blood draw and testified photograph of labelled grey-topped tubes accurately showed how evidence tubes appeared on that night, photograph was sufficiently authenticated for

chain of custody purposes).[1] Here, Buitron testified that he recognized the vials pictured in exhibit 5 by the writing Rico made on the labels that night. The relevance of the writing was to place the vials in the chain of custody that would end with the chemical analysis performed by a later witness. Indeed, as the trial judge suggested during the discussion of the exhibit, "[T]hey could have put a big X on it, and he could say, I recognize it that way." We conclude the State's exhibit 5 was not offered for the truth of any writing that appeared within it; the exhibit did not contain inadmissible hearsay.

The trial court did not abuse its discretion in admitting exhibit 5. We overrule appellant's first issue.

*Reasonableness of the Blood Draw*

In his second issue, appellant challenges the reasonableness of his blood draw pursuant to the Fourth Amendment. The question of whether a specific search or seizure is reasonable under the Fourth Amendment is subject to de novo review. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). "[T]he reasonableness of the manner in which a DWI suspect's blood is drawn should be assayed on an objective, case-by-case basis in light of the totality of the circumstances surrounding the draw." *State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011). A blood

---

[1] "A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory." *Gamiz*, 2020 WL 2182725, at *1.

draw is reasonable if (1) the police were justified in requiring the defendant to submit to a blood test, and (2) the means and procedures employed in taking the defendant's blood respected relevant Fourth Amendment standards of reasonableness. *Id.* at 658 (citing *Schmerber v. California*, 384 U.S. 757, 758 (1966)).

In this case, the officer obtained a warrant for the blood draw, and appellant does not challenge the warrant. Thus, appellant concedes that the police were justified in requiring him to submit to the blood draw. In addressing the "means and procedures employed," we ask (a) whether the test chosen was reasonable, and (b) whether the test was performed in a reasonable manner. *Id.* A presumption exists that venipuncture blood-draw tests are reasonable under the Fourth Amendment, *id.* at 659, and, again, appellant does not challenge the officer's choice of the venipuncture blood draw. Accordingly, our analysis is limited to whether the test was performed in a reasonable manner. Appellant contends there is no evidence to establish that the blood was drawn by a qualified individual or that it was drawn according to accepted medical practices. We disagree on both counts.

Officer Buitron described the procedure he followed to obtain the blood draw. He explained that after he obtained the warrant to draw appellant's blood, he called "the upstairs nursing area" to "let a nurse know that we have a – a blood draw that we need to do." Then he and appellant "just wait for the nurse in the blood room." Buitron testified that blood is drawn by the same nurses that serve the inmates throughout the jail. The person who responded to his call was Jerry Rico, who is

heard on the video of the draw stating that he is a medical assistant and providing his identification number. We conclude that this is sufficient evidence to establish that Rico was a person qualified to draw appellant's blood.

As to how the blood was drawn, the jury had both Buitron's testimony and the video of the draw. Wearing gloves, Rico disinfected the chair and the tray that would hold his equipment. After washing his hands and putting on clean gloves, Rico placed the equipment on the clean tray and had appellant sit in the clean chair. He applied betadine to appellant's arm, inserted a needle, and drew the blood. He inverted and shook the vials of blood as Buitron had explained was required. At no time in the process did appellant indicate he suffered any pain. Indeed, the circumstances here did not invite any concerns for "an unjustified element of personal risk of infection or pain." *Schmerber*, 384 U.S. at 772.

We conclude that ample evidence at trial established appellant's blood draw was performed reasonably when subjected to Fourth Amendment standards. We overrule his second issue.

*Blood Draw as Scientific Evidence*

In his third issue, appellant argues that evidence related to the blood draw was inadmissible under *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). Appellant objected at trial to admission of the Toxicology Analysis Test Report on the ground that forensic toxicologist Terry Robinson, who prepared the report, could not testify that "proper medical procedures" were observed during the blood draw.

Robinson was not present for the draw, and he testified that he had not watched the video of the draw. Again, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer*, 569 S.W.3d at 669.

In this issue, appellant argues that blood draw procedures should be subjected to the scrutiny afforded novel scientific evidence presented by expert witnesses, i.e., before the evidence could be admitted, the State "must persuade the trial court, by clear and convincing evidence, that the evidence is reliable and therefore relevant." *Kelly*, 824 S.W.2d at 573; *see also* TEX. R. EVID. 702. But appellant identifies no authority requiring such scrutiny for blood draws, and we have found no such authority. On the contrary, when the draw itself—or the absence of the person drawing the blood—is the issue raised, rather than the chemical analysis of the blood drawn, courts have refused to apply the standards of expert scientific evidence. *See, e.g., State v. Guzman*, 439 S.W.3d 482, 488–89 (Tex. App.—San Antonio 2014, no pet.) ("[O]ur case law is clear that with respect to blood tests, the expert who must satisfy the criteria [of rule 702] in any particular case is the analyst who tests the blood sample, not the nurse who performs the blood draw."); *see also Russell v. State*, No. 14-15-00036-CR, 2016 WL 1402943, at *7 (Tex. App.—Houston [14th Dist.] Apr. 7, 2016, pet. ref'd) (mem. op., not designated for publication); *Hall v. State*, No. 02-13-00597-CR, 2015 WL 4380765, at *3 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op., not designated for publication). In addition, at least one of our sister courts has stated directly that a witness testifying

to blood draw procedures is a fact witness, not an expert whose testimony is subject to *Kelly* or rule 702. *Schard v. State*, No. 09-16-00291-CR, 2018 WL 1630891, at *6 (Tex. App.—Beaumont Apr. 4, 2018, no pet.) (mem. op., not designated for publication) (nurse testifying concerning blood draw procedure was fact witness, not expert addressing scientific knowledge beyond juror's common experience, so rule 702 not implicated); *Halbirt v. State*, No. 09-12-00120-CR, 2013 WL 5658371, at *4 (Tex. App.—Beaumont Oct. 16, 2013, no pet.) (mem. op., not designated for publication) (same). Finally, to the extent appellant's concern is with the quality of the specimen drawn, we agree with our sister court that the analyst who tested the blood would be able to discern the quality of the blood sample without reliance on a statement by a nurse or by review of a videotape of the nurse's blood draw. *Adkins v. State*, 418 S.W.3d 856, 862 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). We can identify no legal basis to apply the standards of *Kelly* and rule 702 to the blood draw procedures in this case.

The trial court did not abuse its discretion by overruling appellant's objection to the toxicology report. We overrule appellant's third issue.

**Conclusion**

We affirm the trial court's judgment.

/Bill Pedersen, III//

BILL PEDERSEN, III

JUSTICE

200631f.u05

Do Not Publish

TEX. R. APP. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BABLOO JOHN WILLIAMS, Appellant

No. 05-20-00631-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 9, Dallas County, Texas Trial Court Cause No. MB17-63534. Opinion delivered by Justice Pedersen, III. Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 16th day of May, 2022.